IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| **LINDSEY M. BARR**, <br><br> *Plaintiff,* <br><br> v. <br><br> **HEATHER TUCKER**, in her official and personal capacities as Principal of McAllister Elementary School, <br><br> **DEBI MCNEAL**, in her official and personal capacities as Director of Human Resources for Bryan County Schools, <br><br> **PAUL BROOKSHER**, in his official and personal capacities as Superintendent of Bryan County Schools, <br><br> and <br><br> **TREY ROBERTSON,** in his official and personal capacities as Assistant Superintendent of Teaching and Learning, <br><br> *Defendants.* | Civil Action No.: 22-tc-5000 <br><br> **JURY TRIAL DEMANDED** |

## <u>VERIFIED COMPLAINT</u>

Plaintiff Lindsey M. Barr, by and through undersigned counsel, and for her Verified Complaint against Defendants, hereby states as follows:

1

## INTRODUCTION

1. Lindsey Barr was fired from her job as a substitute teacher at Bryan County Schools for speaking out as a Christian, a mother, and a private citizen on a matter of public concern—namely, drawings in a picture book being presented to students at McAllister Elementary School, including her own young children, in the course of a library read aloud program. The book, "All Are Welcome," contains several illustrations of same-sex couples parenting and expecting children, and these pictures conflict with Lindsey's sincerely held religious views on marriage and family—including that marriage should be between one man and one woman, and that family formation should occur within the confines of heterosexual marriage. The Supreme Court has made clear that such topics are "matters of public concern." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps.,* 138 S. Ct. 2448, 2476 (2018) (identifying "sexual orientation and gender identity" as "sensitive political topics" that are "undoubtedly matters of profound 'value' and 'concern' to the public").

2. Parental views about what minor children are being shown at school are themselves matters of public concern. The Georgia legislature recently enacted House Bill 1178, "Parents' Bill of Rights," Laws 2022, Act 718, codified at Ga. Code Ann. § 20-2-786 (eff. July 1, 2022), which recognizes the "fundamental right of parents to direct the upbringing and education of their minor children" and affords parents the "[t]he right to review all instructional material intended for use in the classroom of his or her minor child." *Id.* § 20-2-786(b) & (e)(1)(B). This law directs each board of education, including the Bryan County Board of Education, to adopt "procedures for a parent to object to instructional material intended for use in his or her minor child's classroom or recommended by his or her minor child's teacher." *Id.* § 20-2-786(f)(2)(B). During the signing ceremony for HB 1178, Governor Kemp said: "Today, we're here at the Forsyth County Arts and Learning Center to sign

legislation that puts our children ahead of partisan agendas [and] gets parents back in charge of their kids' education."[1]

3. It was precisely her concern about "partisan agendas" and her desire to be "in charge of [her] kids' education" that prompted Lindsey to speak to the McAllister principal, Defendant Heather Tucker, about the picture book being presented to young children in the library read aloud. Lindsey explained that the book's illustrations conflict with the values she seeks to impart to her two children who attend McAllister, and she asked that they be excused from the presentation. Within hours after presenting those views and making that request, Lindsey was locked out of the system she had used to obtain substitute assignments. Days later, Defendant Tucker told Lindsey that, although her children would be excused from the read aloud program, Tucker was firing Lindsey because she had expressed her views.

4. Defendants' firing of Lindsey for speaking on a matter of public concern violated Lindsey's clearly established rights of free speech and free exercise of religion protected by the First and Fourteenth Amendments of the U.S. Constitution.

5. Defendant Heather Tucker fired Lindsey from McAllister, and Defendant Debi McNeal, BCS Director of Human Resources, extended Lindsey's termination to all Bryan County schools. Lindsey's firing was ratified by BCS Superintendent, Defendant Paul Brooksher, and BCS Assistant Superintendent of Teaching and Learning, Defendant Trey Robertson. All four Defendants are liable for violating Lindsey's clearly established constitutional rights.

---

[1] See thecitizen.com/2022/04/28/gov-kemp-signs-parents-bill-of-rights-other-education-bills/ (last visited on Sept. 28, 2022).

## JURISDICTION & VENUE

6. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

7. This Court has subject-matter jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

8. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343, the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02, the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65, and costs and attorneys' fees under 42 U.S.C. § 1988.

9. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and LR 2.1(a) & (b) because Defendants reside in this district and division and/or all of the events or omissions giving rise to the claims alleged in the Complaint occurred in this district and division.

## THE PARTIES

10. Plaintiff Lindsey Barr resides in Bryan County, Georgia. Until August 18, 2022, she was a substitute teacher for Bryan County Schools ("BCS").

11. Defendant Heather Tucker is and was at all relevant times the principal of McAllister Elementary School, which is located in Richmond Hill, Georgia, and one of the six elementary schools in BCS. She resides in Bryan County, Georgia.

12. Defendant Tucker has supervisory responsibility for determining which teachers substitute at MES.

13. Defendant Debi McNeal is and was at all relevant times the Director of Human Resources for BCS. She resides in Bryan County, Georgia.

4

14. Defendant McNeal has supervisory authority for which teachers substitute for BCS.

15. Defendant Trey Robertson, Ed.D., is and was at all relevant times the Assistant Superintendent of Teaching and Learning for BCS and is designated by the Bryan County Board of Education as the official responsible for receiving complaints under the Bryan County School System Complaint Procedure for Title II, Title IX, and Section 504. He resides in Bulloch County, Georgia.

16. Defendant Paul Brooksher, Ph.D., is and was at all relevant times the Superintendent of BCS. As Superintendent, Defendant Brooksher serves as "executive officer" of BCS. Ga. Code Ann. § 20-2-109(a). Defendant Brooksher has ultimate executive authority over substitute teacher personnel decisions in Bryan County Schools. He resides in Bryan County, Georgia.

17. At all times relevant to this Complaint, and for each act or omission alleged herein, Defendants were acting under color of a statute, regulation, or custom of the State of Georgia (i.e., under color of state law and authority).

## FACTUAL ALLEGATIONS

### A. Lindsey is a Highly Qualified Teacher and Mother.

18. Lindsey M. Barr earned her B.S. degree in Early Childhood Education from Georgia Southern University in Statesboro, Georgia, in 2008.

19. From August 2008 through May 2018, Lindsey served as a full-time teacher with Bryan County Schools ("BCS"). For four of those years, Lindsey was the kindergarten teacher at McAllister Elementary School ("MES") in Richmond Hill, Georgia.

20. As a full-time BCS teacher, Lindsey received annual performance reviews. During the ten academic years she served as a full-time early childhood

education teacher for BCS, Lindsey's received excellent reviews, earning a rating of exemplary on almost all performance criteria.

21. For example, in August 2016 MES principal Defendant Heather Tucker sent Lindsey a note stating, "I am very excited at the opportunity to work with you again. I know you are a fantastic teacher and how much your students and parents love you!" In July 2016, Defendant Tucker sent Lindsey the following note: "I love how you continue to go above and beyond for each of your students." And in November 2017, Defendant Tucker wrote Lindsey that she was "thankful for the relationships you build with all of your students." These notes are attached as Exhibits 1, 2 & 3.

22. Lindsey and her husband have three children, all of whom are enrolled in BCS. Two of their children currently attend MES – one in first grade, the other in third grade.

23. Lindsey and her husband are professing Christians who desire to raise their children according to their sincerely held religious beliefs, including their beliefs that marriage should be between one man and one woman, and that family formation should occur within the confines of heterosexual marriage.

24. In January 2022, Lindsey was hired by BCS as a substitute teacher.

25. Substitute teachers are responsible for facilitating implementation of lesson plans left for them by the responsible teacher, keeping the students in the classroom safe and accounted for, and completing any other tasks assigned by the responsible teacher. Substitute teachers have no policymaking or discretionary role within BCS.

26. During the 2021-22 academic year, Lindsey served as a substitute on roughly 15 occasions, all but two of which were at MES.

27. As an educator and as motivated by her religious beliefs, Lindsey believes that every child deserves to be loved, welcomed, and received into his or her classroom.

28. In her class, Lindsey emphasizes kindness and respects all children regardless of their skin color, ethnicity, religion, and/or family background, including children whose parents identify as gay.

29. Lindsey believes that all children are entitled to a loving and safe classroom environment in which to learn.

30. Although some BCS substitute teachers have received reprimands, Lindsey has never received a reprimand as a BCS substitute teacher.

31. Throughout the entire time Lindsey taught at BCS, either as a full-time teacher or substitute, the quality of her teaching and her treatment of the children has never been the subject of any discipline or complaint.

32. Lindsey had respectful interactions and relationships with all of her colleagues.

33. Lindsey had only respectful and productive interactions with parents.

**B. Lindsey Expresses Concerns About a Book in Conflict with Her Sincerely Held Religious Beliefs and Asks That Her Children Be Excused from Its Presentation.**

34. At the beginning of the 2022-23 school year, Lindsey learned of a new read-aloud program at MES, "Camp Read S'more," in which the school's librarian would present the same book to every class in the school. Lindsey also learned that one book to be used was "All Are Welcome," a 2019 picture book by Alexandra Penfold. The publisher's website describes the book as "[t]he #1 *New York Times* bestselling picture book, celebrating diversity and inclusivity."[2]

---

[2] *See* https://www.bloomsbury.com/uk/all-are-welcome-9781526604071/ (last visited September 28, 2022).

35. The book caused Lindsey concern, because it contains illustrations that conflict with Lindsey's sincerely held religious views on marriage and family.

36. These illustrations picture same-sex couples with school-age children: two females (one of whom is pregnant) embrace as they walk to and later arrive at school with their young daughter; and two co-parenting males are shown at school with their young son.

37. These illustrations conflict with Lindsey's views—as a Christian, a citizen, and a mother—that marriage should be between one man and one woman, and that family formation should occur within the confines of heterosexual marriage.

38. On Tuesday, August 16, Lindsey emailed the MES principal, Defendant Heather Tucker, to request a brief chat. In a subsequent email to Defendant Tucker, Lindsey explained, "I'm just a bit concerned about [the school librarian's] read aloud for this week. I just wanted to chat with you about the illustrations and potential conversations." A copy of this email is attached as Exhibit 4.

39. Lindsey also asked her children's teachers—at a time when she was not performing any duties as a substitute—to excuse them from the reading of "All Are Welcome." Both said they would; and the third-grade teacher thanked Lindsey for bringing the pictures to her attention, as she also has children in the school.

40. Lindsey and Defendant Tucker did not talk until the next day, when Lindsey was at home and not working.

41. In an August 17 telephone call, Lindsey told Defendant Tucker that she believed the book "All Are Welcome" was inappropriate for young children, conflicted with her Christian faith, and appeared to be part of an effort to indoctrinate young children into a progressive ideological agenda.

42. In this August 17 telephone call, Lindsey asked Defendant Tucker that her two children attending MES be excused from the presentation of the book.

43. After the August 17 telephone call, Lindsey sent Defendant Tucker a picture she had taken the previous year of a poster hanging in her child's MES classroom. The poster included a drawing of two men in love (as the heart floating between them clearly is meant to indicate) with the caption "All adults have the right to marriage and to raise a family." In the accompanying note, Lindsey explained:

> I'm not trying to make waves with anyone. I'm trying to protect my children. This is an agenda. This is not ok. If I couldn't post bible verses in my newsletters or read scripture to my classes or cover my students aloud in prayer, this shouldn't be allowed either. It isn't equity and diversity. It's propaganda. You do not have to agree with me, but I appreciate you having the conversation and allowing me to see your perspective as a public school administrator.

A copy of this email is attached as Exhibit 5.

44. In expressing her concerns to Defendant Tucker on the read aloud program, Lindsey was speaking as a citizen and mother of two children attending MES.

45. Lindsey's job responsibilities as a substitute teacher at MES did not include any aspect of the MES library's read aloud program.

46. Lindsey's speech did not disrupt the operations of MES or BCS.

**C. Lindsey is Fired for Expressing Her Concerns.**

47. On Thursday, August 18, the day after her call with Defendant Tucker, Lindsey was unable to access the BCS portal she used to pick up substitute-teaching assignments. She emailed Defendant Tucker: "It appears I have been

9

removed as a sub at MES. I was hoping you could confirm this for me. If I'm removed as a sub, am I also banned as a volunteer?" A copy of this email is attached as Exhibit 6.

48. Lindsey received no response to her August 18 email.

49. At 5:12 p.m. on Friday, August 19, Defendant Debi McNeal, BCS Director of Human Resources, emailed Lindsey to state "Ms. Tucker and I would like to meet with you and discuss your role as a substitute." Defendant McNeal asked for Lindsey's availability between Tuesday, August 23, and Friday, August 26. A copy of this email is attached as Exhibit 7.

50. Defendant McNeal and Defendant Tucker then arranged to meet with Lindsey to discuss her role as a substitute on Tuesday, August 23.

51. In the August 23 meeting, Defendant Tucker claimed that Lindsey's comments expressing her religious views about "All Are Welcome" revealed biases that raised a question whether she could support every child. Because of her speech, Defendant Tucker terminated Lindsey from substitute teaching at MES.

52. In the August 23 meeting, Lindsey informed Defendant Tucker that she had no "personal bias" against people identifying as homosexual. Lindsey also told Tucker that she had expressed her concerns as a Christian mother, not as a teacher.

53. But Defendant Tucker said that she had instructed Defendant McNeal to remove Lindsey as a substitute teacher at MES. She also told Lindsey that her children would be excused from the read aloud program and that Lindsey could continue to volunteer at MES.

54. Defendant McNeal complied with Defendant Tucker's directive and removed Lindsey as a substitute teacher for MES.

55. Defendant McNeal terminated Lindsey's ability to substitute at any BCS school.

56. To this day, Lindsey remains unable to access the account that she had used to obtain MES and BCS substitute assignments.

57. Lindsey has received nothing in writing from MES, BCS, or the Bryan County Board of Education concerning her termination as a substitute teacher.

58. Defendants have not taken any disciplinary action against the librarian who will read "All Are Welcome" to students or against the teacher who displayed the poster including a drawing of two men in love with the caption "All adults have the right to marriage and to raise a family."

## D. Lindsey's Termination is Ratified by the Superintendent and Assistant Superintendent.

59. On September 13, 2022, undersigned counsel notified Defendant Robertson of Lindsey's termination as a substitute teacher and explained why such action violated her constitutional rights. This letter demanded that "Bryan County immediately reinstate Mrs. Barr so she can resume working as a substitute teacher" and requested a response by 5:00 p.m. ET on September 16. A copy of this letter is attached hereto as Exhibit 8. Defendants never responded to the letter.

60. On September 16, undersigned counsel asked Defendant Robertson to confirm receipt of his September 13 letter, "to be sure that your lack of response by the requested time was an intentional decision." A copy of this email is attached as Exhibit 9. Defendants never responded to that email.

61. Upon information and belief, Defendant Robertson received undersigned counsel's letter, shared it with Defendant Brooksher, and upon consideration of its claims decided jointly with Brooksher not to reinstate Lindsey to her position as substitute teacher. The involvement of Defendants Robertson and Brooksher in ratifying the termination of Lindsey as a substitute teacher at BCS

11

and MES will likely have additional evidentiary support after a reasonable opportunity for further investigation and discovery. *See* Fed. R. Civ. P. 11(b)(3).

62. Defendants' wrongful termination of Lindsey as a substitute for BCS and MES has caused her economic harm.

63. Lindsey would have earned $125 per day for each day that she has been prevented from serving as a substitute teacher due to Defendants' termination.

64. But for her termination, Lindsey would have substituted, and reasonably expected to substitute, between 1 and 3 days each week.

65. Defendants' wrongful termination of Lindsey as a substitute was accompanied with a threat that she might lose her ability to volunteer at MES, her children's school, if she continued to express her views about instructional and other material used at the school.

66. Defendants' retaliatory actions against Lindsey, including firing her from her position and threatening to deprive her of the ability to volunteer at her children's school, were sufficient to deter a person of ordinary firmness from exercising their constitutional rights.

67. Defendants' retaliatory actions against Lindsey have effectively chilled Lindsey from exercising her constitutional rights.

68. BCS and MES currently do not have enough qualified substitute teachers to meet their needs.

69. On information and belief, BCS and MES have had numerous instances in which they have been unable to find substitutes for teachers and classes that have needed one.

70. After Lindsey was terminated, a concerned MES parent unconnected to Lindsey sent MES a letter that included in part:

> I wanted to reach out to you regarding a book read to the classes at McAllister Elementary.  The book is "All Are Welcome," by Penfold.  I have been told repeatedly by members of the school board that they don't support indoctrination of the students with woke ideology.  This book is a clear violation of such standards.  While the theme of "all are welcome" is not problematic in itself, this book shoves it down the throats of innocent and no doubt bewildered children.
>
> . . . .
>
> I strongly object to the "slow boil" indoctrination of students of any age which slowly and perniciously destroys the values which has made our country great.  Instead of filling their heads with DEI pap, teach them to read.  Teach them to write (including cursive and good penmanship).  Teach them math.  Teach them to appreciate art, music, nature, and beauty.  Leave out everything else.  Maybe then our overworked teachers will actually have time to teach actual school subjects.  Leave the values training up to the parents.  It is not the school's purview to teach a worldview to our children.  You are required to educate, not indoctrinate. . . .

The letter concluded with a request that MES distribute opt-out forms to parents so that their children may be opted out of objectionable assignments and materials.  This letter was shared anonymously throughout the MES community.  The full text of this letter is attached as Exhibit 10.

### FIRST CAUSE OF ACTION
### RETALIATION FOR PLAINTIFF'S EXERCISE OF HER RIGHT TO FREE SPEECH (42 U.S.C. § 1983)

71. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 70 of this Complaint.

72. Lindsey Barr has rights under the First and Fourteenth Amendments of the U.S. Constitution to express her views regarding marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting.

73. By expressing her views regarding the appropriateness of a picture book used in a read aloud at her children's public elementary school and other instructional material used at the school, Lindsey Barr was engaged in constitutionally protected activity.

74. Defendants took adverse employment action against Lindsey Barr by terminating her from substitute teaching.

75. Defendants' actions in firing Lindsey Barr as a substitute teacher were motivated and substantially caused by Lindsey's exercise of her right to engage in constitutionally protected activity, including the right to express her own views regarding the appropriateness of a picture book and other material used at her children's public elementary school.

76. Defendants would not have made the decision to terminate Lindsey Barr absent her expression of views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting.

77. By firing Lindsey Barr for expressing her views, Defendants unlawfully retaliated against her for exercising her constitutional rights of free speech.

78. Defendants' retaliatory actions against Lindsey Barr were sufficient to deter a person of ordinary firmness from exercising her constitutional rights and thus effectively chilled the exercise of Lindsey Barr's constitutional rights.

79. Lindsey Barr spoke as a private citizen on a matter of public concern.

80. Lindsey Barr's expression of her views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting has not prevented Defendants from efficiently providing services to the public (or even threatened to do so).

81. Lindsey Barr's interest in expressing her views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting outweighs any interest of Defendants in suppressing those views.

## SECOND CAUSE OF ACTION
## UNCONSTITUTIONAL CONTENT AND/OR VIEWPOINT DISCRIMINATION (42 U.S.C. § 1983)

82. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 81 of this Complaint.

83. Lindsey Barr's views on marriage and family are protected by the First and Fourteenth Amendments.

84. Lindsey Barr's views on the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting are protected by the First and Fourteenth Amendments.

85. Lindsey Barr was fired for expressing these protected views.

86. Defendants did not take any disciplinary action against employees who took views opposite that of Lindsey on same-sex marriage, including the librarian who will read "All Are Welcome" and the teacher who posted a picture in her classroom in support of same-sex marriage.

87. The firing of Lindsey Barr for expressing these protected views did not advance a compelling state interest.

88. The firing of Lindsey Barr for expressing these protected views was not narrowly tailored to advance a compelling state interest.

89. The firing of Lindsey Barr for expressing these protected views cannot survive strict scrutiny.

90. By firing Lindsey for expressing her protected views on marriage,

family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting, Defendants have engaged in content and/or viewpoint discrimination in violation of the First and Fourteenth Amendments.

## THIRD CAUSE OF ACTION
## VIOLATION OF PLAINTIFF'S RIGHT TO FREE EXERCISE OF RELIGION (42 U.S.C. § 1983)

91. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 90 of this Complaint.

92. Lindsey Barr's views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting are views that she holds as a Christian and constitute a central component of her sincerely held religious beliefs.

93. Defendants fired Lindsey Barr as a substitute teacher for expressing these sincerely held religious beliefs.

94. Defendants' firing of Lindsey Barr was neither neutral nor generally applicable but was hostile and targeted directly at the content of her religious beliefs.

95. Under Defendants' policies and practices, Lindsey Barr is not allowed to serve as a substitute teacher because of her views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting.

96. By firing Lindsey Barr for expressing her views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and

parenting, Defendants have violated and are violating her right to the free exercise of religion under the First and Fourteenth Amendments of the U.S. Constitution.

## PRAYER FOR RELIEF

Wherefore, Plaintiff asks this Court to enter judgment against Defendants and provide the following relief:

A. A declaratory judgment that Defendants' termination of Lindsey Barr's employment as a substitute teacher violated her clearly established rights protected by the First and Fourteenth Amendments of the U.S. Constitution, including her rights to free speech and the free exercise of her religion;

B. A preliminary and permanent injunction ordering Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf to:

    i. Reinstate Lindsey Barr as a substitute teacher for Bryan County Schools and McAllister Elementary School;

    ii. Refrain from taking further action against her for having expressed her views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting;

    iii. Refrain from taking any action against Lindsey Barr or any of her children attending BCS or MES for having initiated this action; and

    iv. Purge from any records in their possession, custody or control any reference to Lindsey's removal as a substitute teacher for BCS and McAllister;

C. Nominal and compensatory damages for the violation of Lindsey's First and Fourteenth Amendment rights;

D. Lindsey Barr's reasonable attorneys' fees, costs, and other disbursements pursuant to 42 U.S.C. § 1988; and

E. Any other relief to which Lindsey Barr may be entitled.

Respectfully submitted,

Dated: September 30, 2022

**/s/ Keri M. Martin**
Keri M. Martin
GA Bar Number: 679803
Attorney for Lindsey M. Barr
Hall, Gilligan, Roberts
& Shanlever, LLP
7402 Hodgson Memorial Drive,
Suite 110
Savannah, Georgia 31406
Telephone: (912) 777-6636
Email: kmartin@hgrslaw.com

Philip A. Sechler*
DC Bar Number: 426358
Tyson C. Langhofer*
VA Bar No. 95204
Mathew W. Hoffmann*
DC Bar No. 1617417
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
psechler@ADFlegal.org
tlanghofer@ADFlegal.org
mhoffmann@ADFlegal.org

### DEMAND FOR TRIAL BY JURY

Plaintiff Lindsey M. Barr demands a trial by jury for all issues so triable.

**/s/ Keri M. Martin**
Counsel for Plaintiff

## DECLARATION UNDER PENALTY OF PERJURY

I, Lindsey M. Barr, a citizen of the United States and a resident of the State of Georgia, declare under penalty of perjury under 28 U.S.C. § 1746 that the above is true and correct to the best of my knowledge.

Executed this __30__ day of September, 2022, at __Richmond Hill__, Georgia.

_____
Plaintiff Lindsey M. Barr