**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

**LINDSEY M. BARR,**

*Plaintiff,*

v.

**HEATHER TUCKER,** et al. ,

*Defendants.*

Civil Case No. 4:22-cv-00226

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Authorities ................................................................. 3

Introduction ........................................................................... 6

Factual Background ................................................................. 7

    I.   Lindsey is a Christian mother who wants to raise her children according to her faith. ....................................................................... 7

    II.  For over a decade, Lindsey served Defendants as a devoted school-teacher and substitute. .............................................................. 8

    III. Lindsey speaks out against the school teaching her children material that conflicts with her religious beliefs. ...................................... 9

    IV. Defendants fire Lindsey because of her religious speech. ............ 10

Legal Standard ...................................................................... 11

Argument ............................................................................. 12

    I.   Lindsey will likely succeed on the merits of her free speech and free exercise claims. ................................................................ 12

        A. Defendants retaliated against Lindsey because of her religious speech. . 13

            1.   Lindsey spoke as a parent on an issue of public concern. .............. 14

            2.   Defendants discriminated based on the viewpoint of Lindsey's speech on a matter of public concern and that speech in no way undermined the operation of the school. ...................................... 17

            3.   Defendants fired Lindsey because of her speech. ........................... 19

            4.   Defendants would not have fired Lindsey absent her speech. ........ 20

        B. Defendants violated the Free Exercise Clause. ......................................... 21

    II.  Defendants are inflicting ongoing irreparable injury. ................................. 23

    III. Reinstating Lindsey will promote the public interest. ................................ 24

Conclusion ............................................................................ 25

Certificate of Service............................................................... 26

TABLE OF AUTHORITIES

**Cases**

*Adams v. Trustees of the University of North Carolina-Wilmington,*
  640 F.3d 550 (4th Cir. 2011) ................................................................... 11

*Allen v. Autauga County Board of Education,*
  685 F.2d 1302 (11th Cir. 1982) ............................................................... 19

*Amalgamated Transit Union Local 85 v. Port Authority of Allegheny County,*
  39 F.4th 95 (3d Cir. 2022) ...................................................................... 12

*Babb v. Secretary Department of Veteran Affairs,*
  992 F.3d 1193 (11th Cir. 2021) ................................................................. 9

*Beckwith v. City of Daytona Beach Shores,*
  58 F.3d 1554 (11th Cir. 1995) ................................................................. 13

*Belyeu v. Coosa County Board of Education,*
  998 F.2d 925 (11th Cir. 1993) ..................................................... 10, 11, 14

*Board of County Commissioners, Wabaunsee County v. Umbehr,*
  518 U.S. 668 (1996) ................................................................................. 8

*Carollo v. Boria,*
  833 F.3d 1322 (11th Cir. 2016) ............................................................. 8, 9

*Cate v. Oldham,*
  707 F.2d 1176 (11th Cir. 1983) ........................................................... 7, 18

*Connick v. Myers,*
  461 U.S. 138 (1983) ................................................................................. 8

*Cook v. Gwinnett County School District,*
  414 F.3d 1313 (11th Cir. 2005) ......................................................... 8, 14

*Dombrowski v. Federal Aviation Administration,*
  2008 WL 11333718 (N.D. Ga. Sept. 2, 2008) ......................................... 11

*Eiland v. City of Montgomery,*
  797 F.2d 953 (11th Cir. 1986) ................................................................. 14

*Fernandez v. School Board of Miami-Dade County,*
  898 F.3d 1324 (11th Cir. 2018) ............................................................... 10

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ................................................................................. 9

*Givhan v. Western Line Consolidated School District,*
  439 U.S. 410 (1979) ............................................................................... 12

*Janus v. American Federation of State, County & Municipal Employees,*
  138 S. Ct. 2448 (2018) ........................................................................... 10

*Kadalie v. Board of Regents of University System of Georgia,*
  2005 WL 8156251 (S.D. Ga. July 18, 2005) ............................................ 18

*Kennedy v. Bremerton School District,*
  142 S. Ct. 2407 (2022) ........................................ 2, 8, 9, 10, 16, 17, 18

*KH Outdoor, LLC v. City of Trussville,*
  458 F.3d 1261 (11th Cir. 2006) ................................................................ 19

*Lane v. Franks,*
  573 U.S. 228 (2014) ................................................................................... 9

*Nutra Health, Inc. v. HD Holdings Atlanta, Inc.,*
  2021 WL 5029427 (N.D. Ga. June 29, 2021) ............................................ 7

*O'Laughlin v. Palm Beach County,*
  30 F.4th 1045 (11th Cir. 2022) ........................................ 8, 9, 10, 11, 12

*Otto v. City of Boca Raton,*
  981 F.3d 854 (11th Cir. 2020) .............................................................. 7, 19

*Police Department of Chicago v. Mosley,*
  408 U.S. 92 (1972) .................................................................................... 13

*Rankin v. McPherson,*
  483 U.S. 378 (1987) ............................................................................. 13, 14

*Scarbrough v. Morgan County Board of Education,*
  470 F.3d 250 (6th Cir. 2006) .............................................................. 11, 16

*Speech First, Inc. v. Cartwright,*
  32 F.4th 1110 (11th Cir. 2022) ............................................................ 7, 19

*Stanley v. City of Dalton,*
  219 F.3d 1280 (11th Cir. 2000) ........................................................... 13, 14

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  137 S. Ct. 2012 (2017) .............................................................................. 16

*Walden v. Centers for Disease Control & Prevention,*
  669 F.3d 1277 (11th Cir. 2012) ............................................................... 16

*Williams v. Roberts,*
  904 F.2d 634 (11th Cir. 1990) .................................................................. 19

**Statutes**

Ga. Code Ann. § 16-11-66 ............................................................................. 5

Ga. Code Ann. § 20-2-786 .......................................................... 3, 7, 11, 13

**Other Authorities**

Hugh C. Phillips, Note, *Liberating Liberty: How the* Glucksberg *Test Can Solve the Supreme Court's Confusing Jurisprudence on Parental Rights*, 16 LIBERTY U. L. REV. 345 (2022) .................................................................................................... 11

*Letter to the editor: School board clarifies, seeks to correct misinformation*, BRYAN COUNTY NEWS (May 16, 2022), https://bit.ly/3DW1ia0 ......................................... 11

## INTRODUCTION

Lindsey Barr is first and foremost a Christian mother. Her three children attend Bryan County Schools. Two of them attend McAllister Elementary School, where Lindsey also served as a substitute teacher. Lindsey and her husband want to raise their children consistent with their faith, including on issues of marriage and family structure.

So when Lindsey found out that McAllister's librarian planned to read a book depicting same-sex couples to her young children, she had concerns. She respectfully raised those concerns—based on her deeply held religious beliefs—with McAllister's principal, Defendant Heather Tucker, and asked that her children be excused from the reading. She also raised concerns about a poster depicting a same-sex couple that she had seen in one of her children's classrooms.

In response to Lindsey expressing her concerns, Defendant school officials terminated her. Defendant Tucker accused Lindsey of expressing religious "biases" that would prevent her from supporting all students. But Lindsey has no such biases. Lindsey believes that every child she teaches deserves to be loved, welcomed, and received into his or her classroom. And she respects all children regardless of their skin color, ethnicity, religion, or family background, including children whose parents identify as gay. Lindsey has in fact supported all students. In over a decade teaching in Bryan County, Lindsey has had consistently excellent reviews of her classroom performance and respectful interactions with parents and colleagues. She has never been the subject of discipline for the quality of her teaching or her treatment of children. In fact, Defendant Tucker had previously thanked Lindsey for the relationships "she buil[t] with all of [her] students."

By firing Lindsey for her protected speech, Defendants unconstitutionally retaliated against her and burdened her free exercise of religion. When Lindsey spoke out as a parent on curricular materials, she waded into a nationwide issue of profound

public concern—whether, when, and how public elementary schools should address issues related to sexual orientation, including issues such as same-sex marriage, child-bearing, adoption, and parenting. Her speech in no way undermined school operations. Lindsey merely expressed—as a parent—her religious views to her children's principal and other teachers. Her speech did not interfere with school operations or prevent anyone from doing their job. What's more, by equating Lindsey's religious views with "biases," Defendants have targeted and shown hostility to those beliefs.

Lindsey's religious speech is "doubly protected" by the First Amendment, and Defendants' retaliation against Lindsey for it constitutes paradigmatic irreparable injury. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2433 (2022). She needs preliminary relief to promptly remedy Defendants' twice over constitutional violation pending final case disposition. Lindsey respectfully asks this Court to preliminarily enjoin Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf to:

(1) Reinstate her as a substitute teacher for Bryan County Schools and McAllister Elementary School; and

(2) Refrain from taking further action against her for having expressed her views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting.

## FACTUAL BACKGROUND

## I.   Lindsey is a Christian mother who wants to raise her children according to her faith.

Lindsey and her husband have three young children. Verified Compl. ¶ 22. They want to raise their children according to their sincerely held Christian beliefs. *Id.* ¶ 23. Those beliefs include that God created marriage to be between one man and one

woman, and that family formation should occur within the confines of heterosexual marriage. *Id.* Two of Lindsey's children currently attend McAllister Elementary School, part of Bryan County Schools. *Id.* ¶ 22. Consistent with her religious beliefs, rights as a parent, and Georgia law, Lindsey wants to make sure that her children are not exposed at school to material that conflicts with those beliefs. *Id.* ¶¶ 35, 37; *see also id.* ¶ 2 (citing Ga. Code Ann. § 20-2-786).

## II. For over a decade, Lindsey served Defendants as a devoted school-teacher and substitute.

Lindsey taught fulltime in Bryan County Schools for ten years, including four at McAllister. Verified Compl. ¶ 20. Lindsey believes that every child she teaches deserves to be loved, welcomed, and received into his or her classroom. *Id.* ¶ 27. She wants every student to have a loving and safe classroom environment in which to learn. *Id.* ¶ 29. In her class, Lindsey emphasizes kindness. *Id.* ¶ 28. She respects all children regardless of their skin color, ethnicity, religion, or family background, including children whose parents identify as gay. *Id.*

So naturally during those years, Lindsey received consistently excellent performance reviews. *Id.* ¶ 20. McAllister's principal, Defendant Heather Tucker, wrote to Lindsey in August 2016, "I am very excited at the opportunity to work with you again. I know you are a fantastic teacher and how much your students and parents love you!" *Id.* ¶ 21. In July 2016, Defendant Tucker sent Lindsey the following note: "I love how you continue to go above and beyond for each of your students." *Id.* And in November 2017, Defendant Tucker wrote Lindsey that she was "thankful for the relationships you build with all of your students." *Id.*

In January 2022, Bryan County Schools hired Lindsey as a substitute teacher. *Id.* ¶ 24. During the Spring 2022 semester, she served as a substitute on roughly 15 occasions, all but two of which were at McAllister. *Id.* ¶ 26. During Lindsey's entire tenure at Bryan County Schools, she has never received a complaint or discipline for

the quality of her teaching or her treatment of children. *Id.* ¶ 31. Lindsey has had only respectful and productive interactions with the parents of her students. *Id.* ¶ 33. And she has had respectful interactions and relationships with her colleagues. *Id.* ¶ 32.

### III. Lindsey speaks out against the school teaching her children material that conflicts with her religious beliefs.

At the beginning of the 2022–23 school year, Lindsey found out that McAllister's librarian planned to read a book to her children that conflicted with her religious beliefs. Verified Compl. ¶¶ 34–35. That book, "All Are Welcome," depicts same-sex couples with school-age children: two females (one of whom is pregnant) embrace as they walk to and later arrive at school with their young daughter; and two co-parenting males are shown at school with their young son. *Id.* ¶ 36.

Concerned about the book, Lindsey—while off duty—asked her children's teachers to excuse them from the reading of "All Are Welcome." *Id.* ¶ 39. Both teachers said that they would. *Id.* And the third-grade teacher thanked Lindsey for bringing the pictures to her attention because she also had children at McAllister. *Id.*

Lindsey also emailed Defendant Tucker on August 16 asking to discuss her views about "All Are Welcome." *Id.* ¶ 38. Lindsey and Defendant Tucker spoke over the phone on August 17. *Id.* ¶ 41. Lindsey told Tucker that she believed the book was inappropriate for young children, conflicted with her Christian faith, and appeared to be part of an effort to indoctrinate young children into a progressive ideological agenda. *Id.* She asked that her two children attending McAllister be excused from presentation of the book. *Id.* ¶ 42.

After the call, Lindsey sent Defendant Tucker a picture she had taken the previous year of a poster hanging in her child's McAllister classroom. *Id.* ¶ 43. The poster included a drawing of two men in love with the caption "All adults have the right to marriage and to raise a family." *Id. see also id.* Ex. 5 at 3. Lindsey made clear to

Defendant Tucker: "I'm not trying to make waves with anyone. I'm trying to protect my children." *Id.* ¶ 43. Lindsey expressed gratitude for Defendant Tucker's "having the conversation and allowing me to see [Tucker's] perspective as a public school administrator." *Id.*

## IV.   Defendants fire Lindsey because of her religious speech.

The day after her call with Defendant Tucker, Lindsey attempted to log in to the school's portal for accepting substitute teaching assignments but found she could not access it. Verified Compl. ¶ 47. Then, on August 23, Defendant Tucker met with Lindsey and Defendant Debi McNeal, the Bryan County Schools Director of Human Resources. *Id.* ¶¶ 50–51.[1] In that meeting, Defendant Tucker told Lindsey that she had instructed Defendant McNeal to block Lindsey from accepting substitute teaching assignments at McAllister, and Defendant McNeal complied. Ex. 1, transcript at 1:11–18, 3:8–10. Defendant Tucker told Lindsey that Lindsey had shown "biases" against "same-sex" couples. *Id.* at 4:13–16. Defendant Tucker had "concerns" about how Lindsey could "support" a student who had "parents that identify as gay." *Id.* at 4:20–22. Defendant Tucker also thought Lindsey had expressed a "bias" against "multiracial couples" because one of the pictures Lindsey expressed concerns about depicted a white man and a black man with a white child. *Id.* at 5:1–6.

In response, Lindsey made clear that she did not have "personal bias[es]." *Id.* at 5:21. Rather, she had expressed her views not as a substitute teacher but "as a Christian mother" of "young children." *Id.* at 5:22. As that Christian mother, Lindsey did not want the school instructing her children on same-sex marriage. *Id.* at 5:22–23. And Lindsey also made clear she had no "racism bias." *Id.* at 6:9–10. She did not object to the book because it depicted a multiracial couple but because it showed a

---

[1] Lindsey made an audio recording of her August 23 meeting with Defendants Tucker and McNeal. A true and correct transcript of the recorded meeting is Exhibit 1. Georgia is a one-party consent to record state. Ga. Code Ann. § 16-11-66(a).

same-sex couple with a child. *Id.* at 6:3–10. But Defendant Tucker informed Lindsey that she could no longer substitute at McAllister because of her religious speech. *Id.* at 5:13–14. Nonetheless, Defendant Tucker excused Lindsey's children from instruction on "All Are Welcome" and allowed Lindsey to continue to volunteer at McAllister. *Id.* at 8:19–21, 9:11–13. Still, Defendant Tucker warned Lindsey that she risked her volunteering if she continued to express her views about materials used at her children's school. *Id.* at 9:15–17.

Defendant McNeal also blocked Lindsey from substituting at any Bryan County school. Verified Compl. ¶ 55. To this day, Lindsey cannot access the account that she had used to obtain substitute teaching assignments. *Id.* ¶ 56. But Defendants have taken no disciplinary action against the librarian who will read "All Are Welcome" to students or against the teacher who displayed the poster including a drawing of two men in love with the caption "All adults have the right to marriage and to raise a family." *Id.* ¶ 58.

In an effort to resolve the dispute without litigation, counsel for Lindsey informed Defendant Trey Robertson, Bryan County Schools Assistant Superintendent of Teaching and Learning, that Defendants Tucker and McNeal had terminated Lindsey and requested the Defendant Robertson reinstate her. *Id.* ¶ 59. On information and belief, Defendant Robertson shared that letter with Defendant Trey Brooksher, the superintendent. *Id.* ¶ 61. But Robertson and Brooksher decided not to reinstate Lindsey. *Id.* As superintendent, Defendant Brooksher serves as executive officer of Bryan County Schools and has ultimate executive authority over personnel decisions for substitute teachers. *Id.* ¶ 16.

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must show (1) she has "a substantial likelihood that s[he] ultimately will prevail on the merits of the claim;" (2) she will suffer "irreparable injury unless the injunction issues;" (3) "the threatened injury to

the movant outweighs whatever damage the proposed injunction may cause the opposing party"; and (4) "the public interest will not be harmed if the injunction should issue." *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983). In First Amendment cases, the likelihood of success on the merits is the "most important preliminary-injunction criterion." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1128 (11th Cir. 2022). That's because "an ongoing violation of the First Amendment constitutes an irreparable injury"—the "sine qua non of injunctive relief." *Id.* So showing a likelihood of success means a plaintiff will "also meet the remaining requirements as a necessary legal consequence." *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020).

The requested injunction will return the parties to the "last uncontested status" before the dispute, so it is prohibitory, not mandatory. *Nutra Health, Inc. v. HD Holdings Atlanta, Inc.*, 2021 WL 5029427, at *2 (N.D. Ga. June 29, 2021).

ARGUMENT

## I. Lindsey will likely succeed on the merits of her free speech and free exercise claims.

Lindsey spoke as a parent on a matter of profound public and personal religious concern—how public schools engage elementary-aged children on sensitive issues concerning sexual orientation, same-sex marriage, and same-sex family formation. In response, Defendants fired her because Lindsey raised concerns and because they disagreed with what she said. But Lindsey's speech—made to her children's teachers and Defendant Tucker—did not undermine government functioning. To the contrary, responding to parental objections to curricular material is exactly one of the things that Georgia law requires schools to do. *See* Ga. Code Ann. § 20-2-786(f)(2)(B) (requiring school districts to develop procedures to allow parents to "object to instructional materials"). Defendants cannot meet their weighty burden to justify

12

their retaliation and religious hostility. Lindsey is likely to succeed on her First Amendment retaliation and free exercise claims.

### A. Defendants retaliated against Lindsey because of her religious speech.

The Supreme Court has "long since rejected Justice Holmes' famous dictum, that a policeman 'may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.' " *Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 674 (1996). That's because "speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (cleaned up). Indeed, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Id.* So the "law is clearly established that a public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech." *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005).

The Eleventh Circuit applies the four-step *Pickering-Connick* test to public employee First Amendment retaliation claims. *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1051 (11th Cir. 2022). The test asks whether (1) a public employee spoke as a "citizen" on "a matter of public concern"; (2) her "free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities"; (3) "the speech played a substantial part in the adverse employment action"; and (4) the employer "would have made the same decision even in the absence of the protected speech." *Id.*; *see Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016).

The Supreme Court recently clarified that the government bears the burden on the second prong of the analysis. In *Kennedy*, the Court concluded that the plaintiff "carried his threshold burden" under the *Pickering* framework by showing that he spoke "as a citizen addressing a matter of public concern." 142 S. Ct. at 2423, 2425. The Court then proceeded to consider whether the government "prove[d] that its

13

interests as employer outweigh even an employee's private speech on a matter of public concern." *Id.* at 2425. The Court made clear: "at this point the burden shifts to the [school] District." *Id.* at 2426. So the government bears the burden of showing the second and fourth prongs.[2]

Lindsey easily clears her burden under the first and third factors, and the evidence demonstrates that Defendants cannot show the second and fourth factors. What's more, on the second factor, Lindsey establishes that her weighty free speech interests substantially outweigh any governmental interest at stake.

### 1. Lindsey spoke as a parent on an issue of public concern.

"[T]he line between speaking as a citizen or as a public employee turns on whether the speech 'owes its existence to a public employee's professional responsibilities.' " *Carollo*, 833 F.3d at 1329 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006)). The Eleventh Circuit "read[s] narrowly" the phrase "owes its existence to" to apply only to "speech that an employee made in accordance with or in furtherance of the ordinary responsibilities of her employment, not merely speech that concerns the ordinary responsibilities of her employment." *Id.* So "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

Lindsey spoke as a parent, not a substitute teacher. Verified Compl. ¶¶ 44–45, 52. She had concerns about the librarian reading "All Are Welcome" to her children,

---

[2] The Eleventh Circuit has previously held that the plaintiff bears the burden of showing the first three *Pickering* factors, while the government must shoulder the burden on the fourth. *E.g.*, *O'Laughlin*, 30 F.4th at 1051. But, in light of *Kennedy*, Lindsey need only show the first and third factors, while the government must demonstrate the second and fourth. *See Babb v. Sec'y, Dep't of Veteran Affs.*, 992 F.3d 1193, 1201 (11th Cir. 2021) ("[I]f an earlier decision of ours flatly conflicts with an intervening decision of the Supreme Court, then our duty to vertical precedent trumps our duty to horizontal precedent."). Lindsey carries her burden regardless.

so she reached out to the principal asking that her children be exempt. *Id.* ¶¶ 34–35, 38. Lindsey did not serve as the librarian and had no responsibilities to read the book. *Id.* ¶ 45. And in objecting to the poster that had previously hung in her own child's classroom, Lindsey made clear she was "trying to protect [her] children." *Id.* ¶ 43. She "did not speak pursuant to government policy" nor did she "seek[ ] to convey a government-created message." *Kennedy*, 142 S. Ct. at 2424. She was not teaching students, encouraging better classroom attention, grading papers, or "engag[ing] in any other speech the District paid [her] to produce as a [teacher]." *See id.* Rather, she spoke as a concerned parent, not a substitute teacher. *See Belyeu v. Coosa Cnty. Bd. of Educ.*, 998 F.2d 925, 929 (11th Cir. 1993) (teacher's aide spoke on matter of public concern when she raised questions "as the parent of a child attending [a school]"); *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 898 F.3d 1324, 1329, 1330 (11th Cir. 2018) (indicating principal would speak as "private citizen" if he had spoken in his capacity as parent).

Lindsey spoke on an issue of utmost public importance today—whether, when, and how public elementary schools should address issues related to sexual orientation, including issues such as same-sex marriage, child-bearing, adoption, and parenting. The "content, form, and context" of Lindsey's speech all reveal that Lindsey spoke on a quintessential issue of public concern. *O'Laughlin*, 30 F.4th at 1051.

To begin with content and context, the Supreme Court has already recognized that "sexual orientation" is "undoubtedly [a] matter[ ] of profound 'value and concern to the public.'" *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps.,* 138 S. Ct. 2448, 2476 (2018). It did so while listing the "controversial subjects" public employee unions *can address. Id.* When it listed "sexual orientation and gender identity," the Court cited an article on how to teach LGBT issues in first grade. *Id.* at 2476 n.20. And it indicated that speech regarding sexual orientation (and other issues) is of "profound

value and concern to the public," occupying "the highest rung of the hierarchy of First Amendment values" and meriting "special protection." *Id.* at 2476 (cleaned up).

Parental rights in public education is also a "subject of legitimate news interest" and of "value and concern to the public." *O'Laughlin*, 30 F.4th at 1051; *accord Belyeu*, 998 F.2d at 929 ("[T]he curriculum of a public school . . . is a topic worthy of public debate."). Just months ago, Governor Kemp signed the Parents' Bill of Rights into law. *See* Ga. Code Ann. § 20-2-786. It recognizes the fundamental rights of a parent to "direct the upbringing and the moral or religious training" of her child. *Id.* § 20-2-786(e)(1)(A). And it requires school districts to develop procedures to allow parents to "object to instructional materials" and the "school's prescribed course of study in sex education." *Id.* § 20-2-786(f). That law is part of ongoing debate and "national news attention regarding Boards of Education in the media." *Letter to the editor: School board clarifies, seeks to correct misinformation*, BRYAN COUNTY NEWS (May 16, 2022), https://bit.ly/3DW1ia0.[3] Though the Bryan County Board of Education publicly claimed it does not "teach students about sexuality or gender issues," *id.*, Lindsey's concerns raised to Defendant Tucker suggest the opposite. *See also Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 257 (6th Cir. 2006) (high school superintendent's "speech on his religious views and on homosexuality are matters of public concern"); *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 565 (4th Cir. 2011) (speech on "homosexuality, religion, and morality . . . plainly touche[s] on issues of public, rather than private, concern"); *Dombrowski v. FAA*, 2008 WL

---

[3] *See also* Hugh C. Phillips, Note, *Liberating Liberty: How the* Glucksberg *Test Can Solve the Supreme Court's Confusing Jurisprudence on Parental Rights*, 16 LIBERTY U. L. REV. 345, 347 & n.2 (2022) ("The [parental rights in education] conflict was brought into focus when a well-known Democrat politician exclaimed in a gubernatorial debate: 'I don't think parents should be telling schools what they should teach.'").

11333718, at *9 (N.D. Ga. Sept. 2, 2008) ("expressing one's views on particular religious practices or homosexual clergy" is matter of public concern).

As to form, "the law is well-settled that a public employee does not forfeit his free-speech rights simply because he chooses to communicate privately rather than publicly." *O'Laughlin*, 30 F.4th at 1052. The Supreme Court has unanimously ruled that a teacher still speaks on a matter of public concern when she "privately expressed her complaints and opinions to the principal." *Id.* (quoting *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 413 (1979)). Lindsey did just that. Lindsey privately spoke to the principal and her children's teachers to withdraw them from instruction on "All Are Welcome." Verified Compl. ¶¶ 39, 42. Lindsey spoke as a private citizen on a matter of "profound" public concern. *Janus*, 138 S. Ct. at 2476.

## 2. Defendants discriminated based on the viewpoint of Lindsey's speech on a matter of public concern and that speech in no way undermined the operation of the school.

Defendants' viewpoint discrimination here obviates the need for *Pickering* balancing. "[V]iewpoint-based government regulations on speech are nearly always presumptively suspect." *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2022). "That is no less true in the [employee-speech] context, outside of certain narrow exceptions." *Id.* Indeed, "[c]oncern over viewpoint discrimination is the very reason *Pickering* rejected the older rule that the First Amendment does not protect government-employee speech." *Id.* So "public employers do not have a free hand to engage in viewpoint discrimination toward their employees." *Id.* at 109. The "more" a public employer's action "looks like viewpoint discrimination . . . the less likely it will be to survive scrutiny under *Pickering*." *Id.*

Defendants engaged in textbook viewpoint discrimination. They fired Lindsey for expressing her religious beliefs regarding raising her children. Verified Compl. ¶ 51. But Defendants did not discipline other employees who expressed support for teaching same-sex marriage. *Id.* ¶ 58. So there is no need to engage in further

balancing. When a public employee speaks as a private citizen on a matter of public concern, "[a]ny" viewpoint-based restriction "completely undercut[s]" our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 96 (1972). That discrimination is per se invalid. As the Supreme Court has cautioned, courts must remain "[v]igilant" lest employers "silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987).

Not only do Defendants automatically flunk *Pickering* for viewpoint discrimination, but also they cannot satisfy their balancing burden. To strike the *Pickering* balance, courts examine "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made." *Stanley v. City of Dalton*, 219 F.3d 1280, 1289 (11th Cir. 2000). Because Lindsey's speech "more substantially involved matters of public concern," the government must make a "stronger showing" of its interests. *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1564 (11th Cir. 1995).

Lindsey's speech in no way impeded government functioning. She merely informed two teachers and the principal about material she found objectionable as a parent. Verified Compl. ¶¶ 38–39. One of these teachers thanked her for bringing the issue to her attention because she also had children attending McAllister. *Id.* ¶ 39. And the school had a duty under Georgia law to respond to the type of objections Lindsey had as a parent. *See* Ga. Code Ann. § 20-2-786(f). Complying with the law advances—not impedes—government functioning.

As to manner, time, and place, Lindsey made her comments to the other teachers and principal privately and while she was off the clock. Verified Compl. ¶¶ 39–40; *see Rankin*, 483 U.S. at 389 ("[H]er remark was evidently made in a private conversation

with another employee. There is no suggestion that any member of the general public was present or heard [Lindsey's] statement."). She was "not trying to make waves with anyone." Verified Compl. ¶ 43. She did not speak when "performing her other job duties." *Cook*, 414 F.3d at 1320. Nor did she "neglect[ ]" any job duties "as a result of her" speech. *Id.* She discussed her objections respectfully and not "in an inappropriate manner." *Stanley*, 219 F.3d at 1290.

The context of Lindsey's speech also weighs in her favor. She served as a substitute teacher and had substituted for only 15 classes the entire previous semester. Verified Compl. ¶ 26. She had responsibility only for temporarily teaching and supervising children in individual classes. *Id.* ¶ 25. She had no policymaking or discretionary role within the school district. *Id.* "Where, as here, an employee serves no confidential, policymaking, or public contact role, the danger to the agency's successful functioning from that employee's private speech is minimal." *Rankin*, 483 U.S. at 390–91; *see also Belyeu*, 998 F.2d at 930 (teacher's aide "served no confidential, policy-making or public contact role" that would undermine school district's interests). Lindsey had received consistently excellent performance reviews and her file "contained no incidents of misconduct." *See Cook*, 414 F.3d at 1320. She just wanted to have a "conversation" with the principal to share her concerns as a parent. Verified Compl. ¶ 43.

### 3. Defendants fired Lindsey because of her speech.

Lindsey's burden to show causation "is not a heavy one." *Stanley*, 219 F.3d at 1291 & n.20. She more than meets it. Defendants could not have been clearer. Defendant Tucker told Lindsey that her speech conveying her religious beliefs expressed purported "biases" and for that reason Defendant Tucker terminated Lindsey. Verified Compl. ¶ 51. That establishes causation. *See Eiland v. City of Montgomery*, 797 F.2d 953, 955, 960 (11th Cir. 1986) (finding causation when employee reassigned for writing poem after meeting with mayor to discuss that poem).

### 4. Defendants would not have fired Lindsey absent her speech.

Defendants cannot meet their burden to show they would have terminated Lindsey regardless of her speech. They told her that her speech was *the* reason she could not substitute further. *Supra* Section I.A.3. According to Defendant Tucker, Lindsey's religious speech had shown "biases" against "same-sex" couples. Ex. 1, transcript at 4:13–16. Defendant Tucker had "concerns" about how Lindsey could "support" a student who had "parents that identify as gay." *Id.* at 4:20–22.

But Lindsey does not have that "personal bias." *Id.* at 5:21. She had only expressed her sincerely held religious views pertaining to her own children's education. *Id.* at 5:21–22. And those same religious beliefs motivate Lindsey to create a loving and welcoming classroom for each of her students. Verified Compl. ¶ 27. She respects all children, regardless of their skin color, ethnicity, religion, or family background. *Id.* ¶ 28.

Defendant Tucker's previous communications with Lindsey attest to her ability to support all students. Defendant Tucker had thanked Lindsey "for the relationships [she] buil[t] with all of [her] students" and for "go[ing] above and beyond for each of [her] students." *Id.* ¶ 21. Defendant Tucker had also praised Lindsey as "a fantastic teacher" and understood "how much [Lindsey's] students and parents love[d her]." *Id.*

Defendants had no other reason to fire Lindsey. As her performance reviews show, she served as a model teacher in the classroom. *Id.* ¶ 20. She had never received discipline as a substitute. *Id.* ¶ 30. She got along well with her colleagues and students' parents. *Id.* ¶¶ 32–33. And her students loved her. *Id.* ¶ 21. What's more, the school district has a shortage of qualified substitute teachers. *Id.* ¶ 68. Defendants needed Lindsey to substitute, and they had no reason to fire her other than her protected speech.

**B. Defendants violated the Free Exercise Clause.**

The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly." *Kennedy*, 142 S. Ct. at 2421. It performs "its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life." *Id.* By casting Lindsey's sincerely held religious beliefs as "biases" and terminating her because of them, Defendants have burdened Lindsey's exercise of religion. *See Scarbrough*, 470 F.3d at 258 ("It would contravene the intent of the First Amendment to permit the Board effectively to terminate [a superintendent] for his speech and religious beliefs.").

Defendants have no constitutionally permissible justification for burdening Lindsey's religion. As shown above, *supra* Section I.A, the *Pickering* analysis overwhelmingly favors Lindsey, so she is likely to succeed on the merits of her free exercise claim. *See Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1286 (11th Cir. 2012) (applying *Pickering* to public employee free exercise claim).

But good reasons exist why *Pickering* should not apply to religious exercise claims. The Supreme Court "has never before applied *Pickering* balancing to a claim brought under the Free Exercise Clause." *Kennedy*, 142 S. Ct. at 2433 (Thomas, J., concurring). *Pickering* relies on the premise that—in some cases—the public employee's speech is "the government's own speech." *Id.* at 2423 (opinion of the Court). The same cannot be said for religion. And history and tradition reveal that the "Free Exercise Clause protects religious observers against unequal treatment." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (summarizing decades of precedent on the issue). So, the unadulterated Free Exercise Clause applies here.

Defendants violated the Free Exercise Clause because they (1) did not act neutrally to religion and (2) in fact, showed hostility to Lindsey's religion. State action that burdens religion and is not neutral and generally applicable requires the

government to meet strict scrutiny. *Kennedy*, 142 S. Ct. at 2422. Government action does "not qualify as neutral if it is specifically directed at religious practice." *Id.* (cleaned up). Defendants' termination targeted Lindsey's religion. Defendants fired her because they equated her religious views with unacceptable "biases." Ex. 1, transcript at 4:13.

Defendants cannot meet their strict scrutiny burden. In firing Lindsey, they neither have a compelling interest nor employ the least restrictive means. Lindsey caused no disruption to the school. *Supra* Section I.A.2. Nor does anything indicate she cannot teach effectively. *Id.* To the contrary, she treats all children—no matter their background—with the respect and dignity owed them as children of God. Verified Compl. ¶¶ 27–29. And she has received exemplary performance reviews for her teaching and treatment of children. *Id.* ¶ 31.

Defendants have a host of less speech-suppressive alternatives. If they truly had concerns about how Lindsey treated children—contrary to a long record of service showing the opposite—they could have observed Lindsey in the classroom, conducted a thorough investigation (with at least an opportunity for Lindsey to respond), or developed a plan with Lindsey to address their concerns. They did none of that. And they hadn't received any complaints about her treatment of children in the classroom—because she treats all with love and respect. As Defendant Tucker recognized, Lindsey went "above and beyond for each of [her] students" and had the "love" of both "students and parents." Verified Compl. ¶ 21. Instead of operating with a scalpel in an area fraught with First Amendment concerns, Defendants went straight for the sledgehammer and terminated Lindsey soon after she expressed her religious views. Defendants cannot meet their heavy strict scrutiny burden.

Government hostility to religion is per se invalid. *Kennedy*, 142 S. Ct. at 2422 n.1. Defendants denigrated Lindsey's religious beliefs and speech as "biased" and thought that—merely by expressing her religious views—she disqualified herself from

teaching children. Verified Compl. ¶ 51. But "[r]espect for religious expressions is indispensable to life in a free and diverse Republic." *Kennedy*, 142 S. Ct. at 2432–33. Defendants cannot force Lindsey to choose between her religious expression and her job. Requiring Lindsey to check her religious beliefs at the schoolhouse door not only violates the Constitution, but also deprives her students and their parents of a teacher who—motivated precisely by those religious beliefs—creates a classroom where every child is loved and welcomed. Verified Compl. ¶ 27.

## II.   Defendants are inflicting ongoing irreparable injury.

"[D]irect retaliation by the state for having exercised First Amendment freedoms in the past is particularly proscribed by the First Amendment." *Cate*, 707 F.2d at 1189. And "sufferance of such retaliation unquestionably constitutes irreparable injury." *Id.* (cleaned up). Otherwise—"if these rights are not jealously safeguarded"— people "will be deterred, even if imperceptibly, from exercising those rights in the future." *Id.* So, "courts must be able to enjoin activity that seeks to penalize past speech or deter future speech." *Kadalie v. Bd. of Regents of Univ. Sys. of Ga.*, 2005 WL 8156251, at *3 (S.D. Ga. July 18, 2005).

Defendants have refused to reinstate Lindsey, and she remains unable to access the account she used to pick up substitute assignments. Verified Compl. ¶¶ 56, 61. Since August 18, she has not been able to substitute in any Bryan County school—all because Defendants terminated her for her religious speech. *See id.* ¶ 47. Not only have Defendants punished Lindsey for her past speech, they have also chilled her religious expression going forward. *Id.* ¶ 67. As Defendant Tucker warned, Lindsey would jeopardize her ability to volunteer at her children's school by continuing to express her views. *Id.* ¶ 66; Ex. 1, transcript at 9:15–17. Defendants' retaliation— both because of Lindsey's termination and the ongoing chill to her speech—is paradigmatic irreparable harm.

23

### III.  Reinstating Lindsey will promote the public interest.

Because Lindsey seeks an injunction against the government, the third (balancing of the equities) and fourth (public interest) preliminary injunction factors merge. *Otto*, 981 F.3d at 870. Both Lindsey and the public have a strong interest in preliminary relief. Any infringement of the First Amendment constitutes "serious and substantial injury." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). And, courts "serve[ ]" the public interest when they "protect[ ]" "constitutional rights." *Speech First*, 32 F.4th at 1128. That means that "[i]t is clear that neither the government nor the public has any legitimate interest in" acting unconstitutionally. *Otto*, 981 F.3d at 870.

Lindsey's reinstatement does not undermine any governmental interest. Indeed, the Eleventh Circuit applies a rule of "presumptive reinstatement" when governments unconstitutionally discharge employees. *Allen v. Autauga Cnty. Bd. of Educ.*, 685 F.2d 1302, 1306 (11th Cir. 1982). "[E]xcept in extraordinary cases," reinstatement is "required." *Williams v. Roberts*, 904 F.2d 634, 639 (11th Cir. 1990). This is not an extraordinary case. Reinstating Lindsey would not disrupt the school environment. In her prior years substituting, Lindsey has not had conflicts with her colleagues, nor has she caused discord in the school. Verified Compl. ¶¶ 32–33, 46; *see also Allen*, 685 F.2d at 1305 ("[T]he existence of an antagonistic relationship [can]not justify the refusal to reinstate a teacher who had been discharged for exercising his first amendment rights."). She has received exemplary performance reviews for her teaching and treatment of children. Verified Compl. ¶ 20. And she does not exercise any high-level discretionary duties or direct school policy. *Id.* ¶ 25; *see also Allen*, 685 F.2d at 1305 (holding insufficient district court's denial of reinstatement based on "a lack of mutual trust between [the principal] and [the wrongfully discharged teacher]").

CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion for preliminary injunction and order Defendants, pending this Court's entry of final judgment, to: (1) reinstate Lindsey Barr as a substitute teacher for Bryan County Schools and McAllister Elementary School; and (2) refrain from taking further action against her for having expressed her views on marriage, family, and the appropriateness of a public elementary school reading her young children a picture book with drawings of same-sex couples embracing, pregnant, and parenting.

Respectfully submitted,

**/s/ Keri M. Martin**

Keri M. Martin
GA Bar No. 679803
Hall, Gilligan, Roberts
& Shanlever, LLP
7402 Hodgson Memorial Drive,
Suite 110
Savannah, GA 31406
Telephone: (912) 777-6636
kmartin@hgrslaw.com

Philip A. Sechler*
DC Bar No. 426358
Tyson C. Langhofer*
VA Bar No. 95204
Mathew W. Hoffmann*
DC Bar No. 1617417
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
psechler@ADFlegal.org
tlanghofer@ADFlegal.org
mhoffmann@ADFlegal.org

*Counsel for Plaintiff*

*\*Pro Hac Vice application pending*

25

### CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, I electronically filed the foregoing using the CM/ECF system, and will serve the same with Plaintiff's Verified Complaint on the following parties:

Debi McNeal
Trey Robertson
Paul Brooksher
Bryan County Board of Education
8810 Highway 280 East
Black Creek, Georgia 31308


Heather Tucker
290 Sayle Lane
Richmond Hill, Georgia 31324


Dated: September 30, 2022 **/s/  Keri M. Martin**
Counsel for Plaintiff