UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LINDSEY M. BARR<br><br>Plaintiff,<br><br>v.<br><br>HEATHER TUCKER, in her official and personal capacities as Principal of McAllister Elementary School, *et al.*,<br><br>Defendants. | CIVIL ACTION NO.:<br>4:22-CV-00226-WTM-CLR |

# DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

Plaintiff filed her Complaint against Defendants Heather Tucker, Principal of McAllister Elementary School ("MES") in the Bryan County School District ("School District"); Debi McNeal, Human Resources Director for the School District; Paul Brooksher, Superintendent of the School District; and Trey Robertson, Assistant Superintendent of Teaching and Learning (collectively "Defendants"). Plaintiff alleges that Defendants wrongfully terminated her in violation of the First Amendment of the United States Constitution. She seeks the "extraordinary and drastic remedy"[1] of a preliminary injunction, a rigorous standard Plaintiff cannot meet.

For the reasons set forth below, Plaintiff's Motion for Preliminary Injunction [Doc. 8] must be denied.

---

[1] "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

## STATEMENT OF FACTS

Plaintiff worked at the School District as a substitute teacher from January 2022 until August 23, 2022. [*Complaint*, Doc. 1, ¶¶ 24, 51]. During the 2021-22 school year, Plaintiff substituted approximately 15 times, 13 of which were at MES. [Id, ¶ 26]. Despite being at MES for fewer than 20 days, there were a number of incidents that arose due to Plaintiff's conduct while serving as a substitute teacher. There were multiple times where Plaintiff would go to her children's teachers to address matters related to her children, while she was serving as a substitute teacher. [Tucker Declaration, ¶ 2(a)]. In some of those times, the teachers Plaintiff sought out were supervising the students in their classes. [Id.] Plaintiff should have spoken to her children's teachers at times when she was not substituting, such as before or after school hours, when teachers normally talk or meet with parents. [Id.]. Another time when Plaintiff was serving as a substitute teacher, she took a picture of a poster in the teacher's classroom about human rights. [Id., ¶ 2(b)]. Included in that poster was a reference to a right to marry and had a small picture of a gay couple. [Id.]. While she was substituting, Plaintiff sent that picture to at least one parent, claiming that the poster was throughout the school. [Id.]. That resulted in the parent questioning a teacher who did not have the poster in her classroom. [Id.]. Regarding the book All Are Welcome: Plaintiff was substituting when she complained to her children's teachers about the book. [Id., ¶ 2(c)]. With one of those teachers, Plaintiff complained about the book in the school hallway in the presence of her students, as well as the students of the teacher. [Id.]. Several teachers informed Defendant Tucker that they did not want Plaintiff subbing for them due to disruptions she had caused at school. [Id., ¶ 2(d)].

Given these issues in a very short time period of fewer than 20 days at MES, Tucker and McNeal met with Plaintiff and explained to her that she would no longer be subbing at MES and

2

other schools in the District.

## ARGUMENT AND CITATION OF AUTHORITY

In order to obtain preliminary injunctive relief, Plaintiff must produce evidence demonstrating the following elements: (1) a substantial likelihood of success on the merits of their claims; (2) that Plaintiff will suffer irreparable injury unless an injunction is issued; (3) that the threatened injury to Plaintiff outweighs any harm the proposed injunction might cause the School District; and (4) that the requested injunction would not be adverse to the public interest. Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1273–74 (11th Cir. 2013). As noted above, a preliminary injunction is an "**extraordinary and drastic remedy,**" not to be granted unless Plaintiff can *clearly establish* the burden of persuasion as to **each of the four** elements. Siegel, 234 F.3d at 1176. In this case, Plaintiff cannot produce evidence that satisfies *any* of the elements.

### I. Plaintiff cannot meet her burden to demonstrate irreparable injury if the injunction is denied.

Defendants will first address the second prong of the four elements because Eleventh Circuit case law is clear on this issue, and Plaintiff's request for an injunction must be denied on this basis alone, *without need* for a hearing to hear evidence from the Parties.

It is axiomatic that a preliminary injunction is not appropriate when a plaintiff has adequate remedies at law. That principle is well established in the Eleventh Circuit. See *e.g.* Reynolds v. Roberts, 207 F.3d 1288, 1299 (11th Cir. 2000) ("We do not tarry long in concluding that the district court erred in entering the preliminary injunction….A court enters a preliminary injunction to prevent the plaintiff from being injured, and where there is no adequate remedy at law.") (citing *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07 (1959)). In fact, this

Court recently addressed this issue: "[p]reliminary injunctions are a form of prospective relief: 'a preliminary injunction is completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law'." Ravan v. Benton, No. CV420-267, 2021 WL 4270127, at *3 (S.D. Ga. Sept. 2, 2021), report and recommendation adopted, No. CV420-267, 2021 WL 4269877 (S.D. Ga. Sept. 20, 2021) (quoting Alabama v. U.S. Army Corps of Eng'g, 424 F.3d 1117, 1133 (11th Cir. 2005)). See also Univ. Emergency Physicians, P.C. v. Richmond Cnty. Hosp. Auth., No. CV182-143, 1982 WL 1923, at *7 (S.D. Ga. Nov. 11, 1982) ("The plaintiffs have not demonstrated to the Court that they will suffer injuries not compensable by money damages. Therefore, because the plaintiffs have an adequate remedy at law, equitable relief is not appropriate.").

In this case, Plaintiff claims that she was wrongfully terminated, in violation of her free speech and free exercise of her religious beliefs. *If* Plaintiff is able to prove her case, she would be entitled to back pay and reinstatement or front pay. Thus, she clearly has adequate remedies at law. In her Motion, Plaintiff cites Kennedy v. Bremerton Sch. Dist., 142 S. Ct. 2407, 2433 (2022), purportedly for the proposition that the case demonstrates that "Defendants' retaliation against Plaintiff [] constitutes paradigmatic irreparable injury." [*Plaintiff's Brief*, Doc 8-1 at 7]. However, the Supreme Court's ruling in Kennedy was based on summary judgment. In fact, the district court in that case denied the request for preliminary injunction, which was affirmed by the court of appeals and the Supreme Court denied certiorari as to the preliminary injunction. Id. at 2419. Plaintiff also cites Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983), certified question answered, 450 So. 2d 224 (Fla. 1984), but that case does not demonstrate that Plaintiff in this case has irreparable injury. The plaintiffs in Cate sought to enjoin an ongoing civil action for ***malicious prosecution*** in the state courts. The court determined that appellant had been

***penalized*** since the inception of the malicious prosecution action, and continued to be penalized, for exercise of right to petition. Thus, it concluded that neither a monetary award nor prevailing on the merits of the state action could recompense this ongoing injury. In fact the court reiterated the principle that "an injury is 'irreparable' only if it cannot be undone through monetary remedies. Id. at 1189.

Likewise, Kadalie v. Bd. of Regents of Univ. Sys. of Georgia, No. CV404-101, 2005 WL 8156251 (S.D. Ga. July 18, 2005), aff'd sub nom. Kadalie v. Bd. of Regents of Univ. of Georgia, 171 F. App'x 770 (11th Cir. 2006), which was also cited by Plaintiff, is inapplicable to this case. In Kadalie, the court granted partial summary judgment, and defendants filed an interlocutory appeal on the denial of qualified immunity. While that appeal was pending, plaintiff sought to enjoin defendants from terminating his employment, in order to "maintain the status quo existing at the time this suit was filed." Id. at *1. In granting the injunction, the court in Kadalie noted that "[t]he purpose of a preliminary injunction is 'merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *2 (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). In contrast, Plaintiff in this case has already been terminated at the time this suit was filed. Thus, reinstating Plaintiff now would ***not*** be to maintain the status quo until this case is adjudicated on the merits. Plaintiff has not demonstrated that she does not have adequate remedies at law without a preliminary injunction, and thus, fails to meet her burden to demonstrate irreparable harm. Plaintiff's Motion must be denied on this basis alone.

**II. There is not "substantial likelihood" that Plaintiff can succeed on any of the claims raised in the Complaint.**

A. <u>Counts I and II: Free Speech Claim</u>

The elements required to prove claims of retaliation under the First Amendment are well

established:

> an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. If an employee satisfies her burden on the first three steps, the burden then shifts to the employer [4] to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech.

O'Laughlin v. Palm Beach Cnty., 30 F.4th 1045, 1051 (11th Cir. 2022).[2]

(1) Plaintiff did not speak on a matter of public concern.

Because public employers have an interest in regulating the speech of those conducting their business that competes with employees' First Amendment interests, the Supreme Court has developed the now familiar "balancing" tests set forth in Connick v. Myers, 461 U.S. 138 (1983) and Pickering v. Bd. of Educ., 391 U.S. 563 (1968). In Connick, the Supreme Court held that a public employee must first show that the speech involved a "matter of public concern" rather than one of only "personal interest" to the employee. Connick, 461 U.S. at 147. The "main thrust" of the speech must relate to a "matter of political, social, or other concern to the community." Id. at 146; Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993). To determine whether the "main thrust" of the employee's speech is private (personal) or public, the court must examine "the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-148. In analyzing those elements, the court is to determine "whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and

---

[2]Plaintiff contends that the Supreme Court in Kennedy shifted the burden to the employer in the second element. However, the Supreme Court did not directly discussed that issue in its decision. Regardless, even if the burden on the second element belongs to the Defendants, they carry that burden, as shown below.

**what the speaker's motivation in speaking was.**" Mitchell v. Hillsborough Cnty., 468 F.3d 1276, 1283 (11th Cir. 2006) (internal citations omitted) (emphasis added). Thus, an employee's purpose in speaking is a critical component of the analysis of "context" and must be considered in determining whether the speech is a matter of public concern. Morris v. Crow, 117 F.3d 449, 457 (11th Cir. 1997).

Defendants do not dispute that the "content" of Plaintiff's speech meets the public-concern "content" sub-factor. However, the "form" and "context" of Plaintiff's speech demonstrate that the "main thrust" of Plaintiff's "speech" was *personal to her* and not a matter of public concern. See Morgan, 6 F.3d at 754 (the court "must determine whether the purpose of [the speech] was to raise issues of public concern, on the one hand, or to **further her own private interest**, on the other." (internal citations omitted) (emphasis added)). The plaintiff in Morgan complained of sexual harassment by her supervisors. The court acknowledged that sexual harassment in the workplace is a matter of important social interest, but, quoting from a number of its previous cases, reiterated the important principle that "'the mere fact that the topic of the employee's speech was one in **which the public might or would have had a great interest is of little moment**.' 6 F.3d at 754 (internal citations omitted) (emphasis added). The court observed that plaintiff's speech largely focused on her supervisor's behavior and its effect on her work and "was driven by **her own entirely rational self-interest in improving the conditions of her employment**." Id. at 755 (emphasis added).

Plaintiff in this case, by her own admission, confirms that she "privately spoke to the principal and her children's teachers to withdraw them from instruction on 'All Are Welcome'." [*Plaintiff's Brief*, Doc 8-1 at 17]. The purpose of her "speech" was not to raise issues of public concern; rather, it was to further her own private interest to keep her children from participating

7

in the reading of a book to which she opposed. Naturally, MES complied with her request. Notably, Plaintiff asserts that "she was not trying to make waves with anyone." [*Plaintiff's Brief*, Doc 8-1 at 19].

> (2) <u>Plaintiff's free speech interests does not outweigh the employer's interest in effective and efficient fulfillment of its responsibilities.</u>

Plaintiff's argument rests on the presumption that there was viewpoint discrimination because Defendants fired her for expressing her religious beliefs and that she did not cause any disruption while she was a substitute teacher. However, as shown below, Plaintiff was not terminated for her religious beliefs or the expression of those beliefs. Furthermore, Plaintiff's actions caused disruption, as will also be shown below.

> (3) and (4) <u>Plaintiff fails to demonstrate that her speech played a substantial part in the termination and a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech.</u>

Plaintiff ignores the fact that although she was a substitute teacher for fewer than 20 days at MES, she engaged in several incidents that caused disruption at the school. On numerous occasions, Plaintiff went to see her children's teachers to address matters related to her children, while she was serving as a substitute teacher.[3] In some of those times, Plaintiff interrupted teachers as they were supervising the students in their classes. Plaintiff should have spoken to her children's teachers at times when she was not substituting, such as before or after school hours, when teachers normally talk or meet with parents. On another time when Plaintiff was serving as a substitute teacher, she took a picture of a poster in the teacher's classroom and sent

---

[3] Plaintiff acknowledged she did this and conceded that she should not have done so. [Doc 8-2, pg. 11:21-12:2].

that picture to at least one parent, claiming that the poster was throughout the school. That resulted in the parent questioning a teacher who did not have the poster in her classroom. Furthermore, Plaintiff was substituting when she complained to her children's teachers about the book All Are Welcome. With one of those teachers, Plaintiff complained about the book in the school hallway in the presence of her students, as well as the students of the teacher. The various disruptive conduct resulted in several teachers informing Defendant Tucker that they did not want Plaintiff subbing for them. Plaintiff should have been focusing on her duties as a substitute teacher and not spend that time addressing personal issues related to her children with her children's teachers or sharing her views about books or reading activities with other teachers.

Even if the Court were to determine that Plaintiff has satisfied the requirements of a *prima facie* case of First Amendment retaliation, Defendants have demonstrated that they would have made the decision based on the non-retaliatory reasons shown above, absent her speech. Furthermore, Defendant Tucker was also concerned about the possible bias Plaintiff may have toward students who are homosexual or students who have parents who are homosexual or interracial couples, due to the phone conversation they had before the meeting on August 23, 2022. Surely, Plaintiff is not suggesting that a bias against such students is permissible in the school setting. Rather, Plaintiff contends that she does not have such biases and that Tucker erred in so believing. However, the Eleventh Circuit has held that the prohibition against employment discrimination does not fundamentally alter the employment relationship which authorizes an employer to "fire an employee for a good reason, a bad reason, a reason based on **erroneous** facts, or for no reason at all." Nix v. WLCY Radio/Rahall Commc'ns., 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis added). See also Knight v. Baptist Hosp. of Miami Inc., 330 F.3d 1313, 1317 n. 6 (11th Cir. 2003) ("Even if, as [the employee] claims, the events did not

9

actually occur, they can be considered if [the decisionmaker] honestly believed they occurred.");  Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001) (actions taken based on **mistaken**, nondiscriminatory belief do not violate Title VII).

    B.    Count III: Free Exercise:

Plaintiff's free exercise claim rests solely on the premise that the Defendants burdened her exercise of her religious beliefs by terminating her for those beliefs. Plaintiff certainly has not shown any other manner in which Defendants burdened her exercise of religion. However, as shown above, Defendants terminated her employment for reasons completely unrelated to her religious beliefs. Moreover, Defendant Tucker was aware of the incident involving the poster in early April 2022. She believed at that time, and now, that Plaintiff's objection to gay marriage was based on her religious beliefs. To meet the causation requirement to establish a *prima facie* case of retaliation under in employment discrimination cases, the United States Supreme Court has stated that while mere "temporal proximity" between the employer's knowledge of protected activity and an adverse employment action can be sufficient evidence of causality to establish a *prima facie* case of retaliation, the temporal proximity must be "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-274 (2001). In this regard, the Eleventh Circuit has held that as little as three months between the protected activity and the adverse employment action is ***insufficient*** to establish the causal nexus. Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004). See also Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."); Wascura v. City of S. Miami, 257 F.3d 1238, 1244-1245 (11th Cir. 2001). In this case, Plaintiff was not terminated until over four months after Tucker was aware of Plaintiff's religious beliefs.

Plaintiff's free exercise claim is brought pursuant to 42 U.S.C. § 1983 to enforce her religious rights under the First Amendment. However, when Section 1983 is used as a parallel remedy for a violation of Title VII, the elements of the two causes of action are the same. Postell v. Greene Cnty. Hosp. Auth., 2007 WL 1876014 (M.D. Ga. 2007) (aff'd sub nom. Postell v. Green Cnty. Hosp. Auth., 265 F. App'x 856 (11th Cir. 2008)) (citing Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir.2005)). Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). In order to prevail in a Title VII employment discrimination case, the plaintiff must establish that the employer made an "adverse" employment decision with the intent to discriminate against her on the basis of one of the characteristics protected by Title VII. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). The plaintiff may proceed with direct evidence that proves the existence of discriminatory intent "without inference or presumption." Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Therefore, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor" constitute direct evidence of discrimination. Akouri v. State of Florida Dep't of Transp., 408 F.3d 1338, 1347 (11th Cir. 2005) (quoting Rojas v. Florida, 285 F.3d 1339, 1342 n. 2 (11th Cir. 2002)). In the absence of direct evidence, the plaintiff may proceed using the familiar evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for establishing discrimination in Title VII cases with circumstantial evidence.

In this case, there is no "direct" evidence of intent to discriminate against Plaintiff on the

11

basis of her religion[4], and therefore, Plaintiff must proceed using the McDonnell Douglas framework. Plaintiff may establish a *prima facie* case of religious discrimination by presenting evidence sufficient to prove that (1) she had a *bona fide* religious belief that conflicted with an employment requirement; (2) she informed her employer of her belief; and (3) she was discharged for failing to comply with the conflicting employment requirement. Jordan v. Conway, 441 F. App'x 761, 763 (11th Cir. 2011) (citing Morrissette–Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1322 (11th Cir. 2007)). If Plaintiff establishes a *prima facie* case, the burden shifts to the School District to show it was unable to accommodate reasonably the Plaintiff's religious observance or practice without undue hardship. Telfair v. Fed. Exp. Corp., 567 F. App'x 681, 683-84 (11th Cir. 2014) (citing Walden v. Ctrs. for Disease Control & Prevention, 669 F.3d 1277, 1293 (11th Cir. 2012). Defendants contend that Plaintiff cannot establish a *prima facie* case of religious discrimination because she never identifies a *bona fide* religious belief that conflicted with an employment requirement.

### III. Plaintiff also fails to demonstrate that the threatened injury to Plaintiff outweighs any harm the proposed injunction might cause Defendants, and that the requested injunction would not be adverse to the public interest.

Despite having the burden to establish the last two elements Plaintiff must demonstrate to obtain the "extraordinary and drastic remedy" of a preliminary injunction, Plaintiff's arguments as to these two elements consist of the general proposition that the public has a strong interest in protecting constitutional rights. Plaintiff contends that her reinstatement "does not undermine any government interest." However, this claim ignores all the issues and disruption she caused

---

[4] Plaintiff may argue that the concerns regarding bias she may have against certain students constitute direct evidence. However, that comment does not constitute a "blatant remark," without "inference or presumption" to constitute direct evidence

12

by not focusing on her duties as a substitute teacher and instead spend some of that time as a substitute teacher addressing personal issues related to her children with her children's teachers or sharing her views about books or reading activities with other teachers.  Requiring the School District to bring back an employee who has caused disruption as Plaintiff has would cause significant harm to the Defendants, as well as the public interest.

## CONCLUSION

Plaintiff has failed to show that her First Amendment rights were violated and cannot meet the standard for the "extraordinary and drastic remedy" of a preliminary injunction.  For the reasons shown above, her Motion for Preliminary Injunction must be denied.

Respectfully submitted this 21st day of October, 2022.

**HARBEN, HARTLEY & HAWKINS, LLP**

*/s/ Hieu M. Nguyen*
Hieu M. Nguyen
Georgia Bar No.  382526
Aparesh Paul
Georgia Bar No. 362648

340 Jesse Jewell Parkway Ste. 750  ATTORNEYS FOR DEFENDANTS
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Email: hnguyen@hhhlawyers.com
apaul@hhhlawyers.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on the 21st day of October, 2022, he electronically filed the *Defendants' Response to Plaintiff's Motion for Preliminary Injunction* with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

                                                    HARBEN, HARTLEY & HAWKINS, LLP

                                                    ***/s/ Hieu M. Nguyen***
                                                    Hieu M. Nguyen
                                                    Georgia Bar No. 382526

340 Jesse Jewell Parkway Ste. 750     ATTORNEY FOR DEFENDANTS
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Facsimile: (770) 532-0399
Email: hnguyen@hhhlawyers.com