# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| **LINDSEY M. BARR,** *Plaintiff,* v. **HEATHER TUCKER,** et al., *Defendants.* | Civil Case No. 4:22-cv-00226-WTM-CLR |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

TABLE OF CONTENTS

Table of Authorities ........................................................................................... 3

Introduction ...................................................................................................... 5

Argument .......................................................................................................... 6

    I.    Lindsey will likely succeed on her free speech retaliation claim. ................. 6

        A.  Lindsey spoke as a parent on an issue of public concern. ......................... 6

        B.  Lindsey's speech did not cause any disruption. ........................................ 8

        C.  Defendants fired Lindsey because of her speech. .................................... 11

        D.  Defendants would not have fired Lindsey absent her speech. ................. 12

    II.   Lindsey will likely succeed on her free exercise claim. .............................. 14

    III.  Defendants irreparably injured Lindsey by terminating her for her religious speech. .................................................................................... 15

    IV.  Reinstating Lindsey will restore the status quo. ......................................... 17

Conclusion ...................................................................................................... 17

Certificate of Service ...................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Beckwith v. City of Daytona Beach Shores*,
   58 F.3d 1554 (11th Cir. 1995) ............................................................................... 9

*Belyeu v. Coosa County Board of Education*,
   998 F.2d 925 (11th Cir. 1993) ................................................................. 7, 10, 11

*Cate v. Oldham*,
   707 F.2d 1176 (11th Cir. 1983) ......................................................................... 5, 16

*Cook v. Gwinnett County School District*,
   414 F.3d 1313 (11th Cir. 2005) ............................................................................ 9

*Dixon v. The Hallmark Companies, Inc.*,
   627 F.3d 849 (11th Cir. 2010) ............................................................................ 15

*Elrod v. Burns*,
   427 U.S. 347 (1976) ............................................................................................ 16

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) .............................................................................................. 6

*Givhan v. Western Line Consolidated School District*,
   439 U.S. 410 (1979) .............................................................................................. 7

*Holly v. Seminole School District*,
   755 F.2d 1492 (11th Cir. 1985) ................................................................... 12, 13

*Johnson v. Bergland*,
   586 F.2d 993 (4th Cir. 1978) ............................................................................. 16

*Johnson v. Miami-Dade County*,
   948 F.3d 1318 (11th Cir. 2020) ......................................................................... 14

*Kadalie v. Board of Regents of University System of Georgia*,
   2005 WL 8156251 (S.D. Ga. July 18, 2005) .................................................. 16, 17

*Kennedy v. Bremerton School District*,
   142 S. Ct. 2407 (2022) ................................................................................. 11, 14

*Morris v. Crow*,
   117 F.3d 449 (11th Cir. 1997) .............................................................................. 7

*Mt. Healthy School District v. Doyle*,
   429 U.S. 274 (1977) ............................................................................................ 16

*Nutra Health, Inc. v. HD Holdings Atlanta, Inc.*,
   2021 WL 5029427 (N.D. Ga. June 29, 2021) .................................................... 17

*O'Laughlin v. Palm Beach County*,
   30 F.4th 1045 (11th Cir. 2022) .................................................................... 6, 7, 8

*Patterson v. Georgia Pacific, LLC,*
  38 F.4th 1336 (11th Cir. 2022) ............................................................................ 14

*Rankin v. McPherson,*
  483 U.S. 378 (1987) .............................................................................................. 9

*Stanley v. City of Dalton,*
  219 F.3d 1280 (11th Cir. 2000) ..................................................................... 11, 12

*Walden v. Centers for Disease Control & Prevention,*
  669 F.3d 1277 (11th Cir. 2012) ........................................................................... 14

*Yeargin Construction Company v. Parsons & Whittemore Alabama Machinery & Services Corp.,*
  609 F.2d 829 (5th Cir. 1980) ............................................................................... 17

**Statutes**

Ala. Code § 16-40A-5(a) ............................................................................................. 6

Fla. Stat. § 1001.42(8)(c)(3) ........................................................................................ 6

Ga. Code Ann. § 20-2-786 ........................................................................................ 10

**INTRODUCTION**

When Lindsey Barr expressed concerns as a Christian parent about a schoolwide read-aloud program that would introduce her young children (including a first-grader) to same-sex marriage, Defendants said her concerns evinced "biases" and promptly terminated her as a substitute teacher. Those same Defendants now argue that they did not fire Lindsey for what she said, but because she expressed a private concern and because her speech disrupted school operations. Those arguments lack colorable merit. Lindsey expressed her concerns not as an employee speaking about school business, but as a parent objecting to certain curriculum, and her speech did not prevent teachers from teaching or students from learning. There is no evidence of disruption of any kind, much less one that justifies retaliation against protected speech. And the undisputed facts show Lindsey treats all students equally, has never received a complaint or discipline regarding her teaching or treatment of children, and successfully served as a teacher for Bryan County Schools for over a decade. Defendants' post hoc rationalizations about disruption fail to justify their retaliation against Lindsey for expressing her concerns.

Moreover, Defendants' retaliation has inflicted and is inflicting paradigmatic irreparable injury upon Lindsey. Defendants punished her for expressing concerns about her children's education. That direct retaliation undermines the very purpose of the First Amendment—protecting speech on public affairs in our self-governing society. By penalizing Lindsey's speech, Defendants have deterred Lindsey—and other public employees—from speaking out in the future about issues of public importance. And Defendants have conditioned Lindsey's continued volunteering at her own children's school on her keeping certain views to herself. As the Eleventh Circuit has held, it is "well settled" that that ongoing censorship is irreparable. *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983). Lindsey's requested preliminary

injunction will remedy that injury and restore the parties to the appropriate status quo before Defendants' unlawful action.

## ARGUMENT

### I. Lindsey will likely succeed on her free speech retaliation claim.

#### A. Lindsey spoke as a parent on an issue of public concern.

Defendants do not dispute that Lindsey spoke as a "private citizen[ ]." *See Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). And they concede that the "content" of Lindsey's speech—"undoubtedly the most important factor in assessing whether particular speech touches on a matter of public concern"—shows she spoke on a matter of public concern. *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1051 (11th Cir. 2022); *see* Opp. 7. That makes sense given that Lindsey spoke on an issue of national debate— whether, when, and how public elementary schools should address issues related to sexual orientation, including same-sex marriage, child-bearing, adoption, and parenting. Doc. 8-1 at 15–17.[1] Instead, Defendants argue that the "form" and "context" of Lindsey's speech on that issue of national importance show her "purpose" in speaking was limited to her own personal interest. Opp. 7. Not so.

As to form, Defendants appear to suggest that because Lindsey "privately spoke to the principal," her speech loses its protection. Opp. 7. But the Eleventh Circuit has soundly rejected that argument: it is "crystal clear" and "well-settled that a public employee does not forfeit his free-speech rights simply because he chooses to communicate privately rather than publicly." *O'Laughlin*, 30 F.4th at 1052. Defendants have not even attempted to—and could not—distinguish this case from *Givhan*. Doc. 8-2 at 17 (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 413

---

[1] Just this year, both Florida and Alabama passed laws that prohibit classroom instruction for children from kindergarten through third grade in Florida and fifth grade in Alabama "on sexual orientation or gender identity" in "a manner that is not age-appropriate or developmentally appropriate." Fla. Stat. § 1001.42(8)(c)(3); Ala. Code § 16-40A-5(a).

6

(1979)). The *Givhan* Court unanimously reversed the old Fifth Circuit's holding that because the plaintiff "had privately expressed her complaints and opinions to the principal, her expression was not protected under the First Amendment." 439 U.S. at 413. To the contrary, no relevant precedent "support[s] the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly." *Id.* at 414. What's more, Defendants' concession that Lindsey spoke privately to Defendant Tucker undermines their post hoc claim that Lindsey's speech disrupted the functioning of the school. *Infra* Section I.B.

As to context, the Eleventh Circuit has made clear—in cases cited by Defendants—that speaking on a matter of personal interest, as opposed to one of public concern, relates to "whether the employee spoke for herself *as an employee.*" *Morris v. Crow*, 117 F.3d 449, 457 (11th Cir. 1997) (emphasis added); *see* Opp. 7 (citing *Morris*). Lindsey did not speak to improve the conditions of her employment as a substitute teacher. She spoke as a parent "to keep her children from participating in the reading of a book," which violated her sincerely held religious beliefs. Opp. 7–8. For the same reason, she objected to a classroom poster depicting a same-sex couple and expressed concern that the school was pushing "an agenda" rather than educating students. Verified Compl. ¶ 43. The public undisputedly has an interest in what public schools teach children. *See Belyeu v. Coosa Cnty. Bd. of Educ.*, 998 F.2d 925, 929 (11th Cir. 1993) ("context" of a "special education teacher's aide['s]" speech on "the curriculum of a public school" and "as the parent of a child" attending that school reflected that the teacher's aide spoke on a matter of public concern).

Indeed, the Eleventh Circuit recently reversed a district court that adopted Defendants' logic regarding "context." *See O'Laughlin*, 30 F.4th at 1051. There, the lower court found the plaintiffs failed to establish context because, in the court's estimation, they "were motivated to speak by personal interests" in an election. *Id.*

7

The panel "rejected [the district court's] conclusion that [the plaintiffs'] election-related motivation deprives the speech of their publicness," even granting that "their personal interest in the outcome of the union election" "motivated" their speech. *Id.* at 1052. That was because "issues regarding the operation of government, including issues of union organization, are often considered matters of public concern." *Id.* (cleaned up). So too here. Lindsey spoke about public school curriculum on sexual orientation, an issue of extensive public debate leading to the recent passage of Georgia's Parents' Bill of Rights, which recognizes parents' right to "object to instructional materials." Doc. 8-1 at 16. Speaking about instructional materials to be presented to her children and other elementary school students in the context of that larger debate—"far from undermining" the protection owed Lindsey's speech—in fact "strengthens it." *O'Laughlin*, 30 F.4th at 1053.

### B. Lindsey's speech did not cause any disruption.

Defendants offer a handful of conclusory statements about Lindsey's interactions with other teachers in an attempt to show Lindsey's speech disrupted the district's functioning. Defendants attempt to rely on their assertions that (1) Lindsey discussed matters with her children's teachers while she was substituting and "interrupted" teachers "as they were supervising" students; (2) Lindsey was substituting when she complained to her children's teachers about "All Are Welcome"; (3) Lindsey took a picture of a poster in a classroom while on duty and sent it to one other parent; and (4) "several teachers" told Defendant Tucker they did not want Lindsey substituting for their classes. Opp. 8–9. But (1) and (2) never happened and show no disruption; (3) is trivial—indeed, Defendant Tucker took no action when she learned about it last April; and (4) is another vague rationalization that Defendants neither claim was caused by Lindsey's speech nor link to any actual disruption. None of Defendants' vague and conclusory statements meet the "stronger showing" of government

interests necessary because of the heightened protection owed Lindsey's speech. *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1564 (11th Cir. 1995).

While performing her duties as a substitute, Lindsey never addressed matters relating to her children with their teachers. Barr Decl. ¶ 2. Contrary to Defendant Tucker's claims, Doc. 17-1 ¶ 2(c), Lindsey raised concerns about "All Are Welcome" to her children's teachers at night and before school started, Barr Decl. ¶¶ 4–5. No students were present when Lindsey expressed her concerns. *Id.* ¶ 5. And Lindsey did not interrupt any teaching duties when she took a picture of the classroom poster; nor did she claim that the poster appeared throughout the school. *Id.* ¶ 3.

What's more, Defendants do not dispute that because Lindsey had "no confidential, policy-making or public contact role," her speech is even less likely to disrupt school. Doc. 8-1 at 19. But Defendants' conclusory statements fail to show any evidence of interference with the functioning of the district. Defendants do not argue that teachers lost instruction time by talking to Lindsey or that they could not effectively supervise their students because of Lindsey. No evidence even hints at students running the halls unsupervised because of Lindsey's speech. And nothing shows that students—to the extent they heard Lindsey's concerns at all—lost classroom instruction or became disturbed. Instead, Defendants baldly assert that Lindsey talked to other teachers while "they were supervising" students. Opp. 8. Simply making brief comments to other teachers or momentarily snapping a single photo do not in themselves constitute disruption. *See Rankin v. McPherson*, 483 U.S. 378, 381 389 (1987) (no evidence that comment "if they go for him again, I hope they get him" in response to assassination attempt on President Reagan "made at the workplace" caused "interfere[nce] with the efficient functioning of the office"). Defendants are "unable to point to any specific job duties that [Lindsey] neglected as a result of her" speech. *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1320 (11th Cir. 2005).

Contrary to what Defendants claim, Opp. 9, a single parent questioning a single teacher about a poster also does not interfere with the school's functioning. *Contra* Opp. 9. Despite knowing in April 2022 that Lindsey had shared a picture of the classroom poster, Doc. 17-1 ¶ 2(b), Defendant Tucker never discussed the issue with Lindsey, informed Lindsey that she had violated any school policy, or disciplined Lindsey for sharing that picture, Barr Decl. ¶ 3. And again, Defendants do not claim that students lost instructional time or that teachers could not teach because of the single parent's single question. Georgia law recognizes that parents have the fundamental right to "direct the upbringing of their children" and "object to instructional materials" in school. Ga. Code Ann. § 20-2-786. Far from disrupting operations, answering parental inquiries promotes the school's functioning. *See Belyeu*, 998 F.2d at 928 (no disruption from discussion of school employee's speech "by School System personnel and in the community").

Before terminating Lindsey, Defendant Tucker never told Lindsey that other teachers did not want her substituting for their classes. Barr Decl. ¶ 6. Indeed, Lindsey had numerous opportunities to substitute throughout McAllister. *Id*. And Defendants do not dispute that Bryan County Schools has a substitute teacher shortage and has been unable to find substitutes when needed. Verified Compl. ¶¶ 68–69. When she fired Lindsey, Defendant Tucker first discussed Lindsey's purported "biases" and only after mentioned that unnamed teachers requested Lindsey not substitute in their classes. Doc. 8-2 at 5:10–11. Defendant Tucker never gave Lindsey the chance to talk to these anonymous teachers and resolve any differences they allegedly had, *see* Barr Decl. ¶ 6, and Tucker never asserted those teachers did not want Lindsey to substitute because of what Lindsey said. And now—after never mentioning any disruption when she fired Lindsey—Defendant Tucker claims those other teachers did not want Lindsey "subbing for them due to" the "disruptions" Lindsey purportedly caused. Doc. 17-2 ¶ 2(d). But Defendant Tucker

10

disclaims that Lindsey's speech caused those "disruptions." *Id.* ¶ 2. Defendants' "evidence does not show any tangible impact of [Lindsey's] speech." *Belyeu*, 998 F.2d at 928.

### C. Defendants fired Lindsey because of her speech.

Defendants' claim that they fired Lindsey because she disrupted the operation of the school contradicts the reasons Defendant Tucker gave for Lindsey's termination. Defendants never raised concerns about disruption in "contemporaneous correspondence with [Lindsey]." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2432 n.8 (2022). When she fired Lindsey, Defendant Tucker told Lindsey she had purported "biases" as shown when she expressed her concerns about curricular material. Verified Compl. ¶ 51. Only after discussing those biases did Defendant Tucker claim that an unknown number of unnamed teachers requested Lindsey not substitute for their classes. Doc. 8-2 at 5:10–11. Defendant Tucker nowhere mentioned the other concerns Defendants now raise. So Defendants' "hypothesized" concerns about disruption, "invented *post hoc* in response to litigation" do not qualify as a "genuine" government justification. *Kennedy*, 142 S. Ct. at 2432 n.8.

Lindsey has shown all the other indicia the Eleventh Circuit has held establish causation. *See Stanley v. City of Dalton*, 219 F.3d 1280, 1291 & n.20 (11th Cir. 2000). First, Defendants do not dispute that they locked Lindsey out of the substitute assignment portal just one day after she expressed her concerns to Defendant Tucker. Verified Compl. ¶ 47. Second, Defendants' asserted reasons for Lindsey's discharge have varied, with Defendant Tucker first claiming she terminated Lindsey because of her alleged "biases," and Defendants now claiming they did so because of a purported disruption. Third, Defendants' newly asserted reasons for firing Lindsey are pretextual because she caused no disruption to the school. *Supra* Section I.B.

11

## D. Defendants would not have fired Lindsey absent her speech.

Defendants cannot meet their burden to show they would have terminated Lindsey absent her protected speech. *See Stanley*, 219 F.3d at 1293 (burden shifts to public employer "to show by a preponderance of the evidence that it would have reached the same decision as to the plaintiff even in the absence of the protected conduct" (cleaned up)). Notably, Defendants cannot meet their burden merely by referring to other reasons that might exist to support termination; rather, the inquiry is a de novo one into "whether the employer was motivated by an unconstitutional desire to discharge an individual in retaliation for [her] First Amendment activity." *Holly v. Seminole Sch. Dist.*, 755 F.2d 1492, 1501–02 (11th Cir. 1985). Here, the evidence is overwhelming that Lindsey *would not* have been terminated but for her protected speech, including:

- Defendant Tucker admitted that she instructed Defendant McNeal to block Lindsey from picking up substitute teaching assignments the day after Lindsey expressed her concerns to Defendant Tucker. Verified Compl. ¶¶ 53–55; Doc. 8-2 at 3:9–10.
- Five days after blocking Lindsey from substitute teaching assignments, Tucker fired her. Verified Compl. ¶ 51. The first reason Tucker gave for terminating Lindsey was that by expressing her concerns, Lindsey "shared some biases." Doc. 8-2 at 4:13.
- Tucker never raised any concerns with Lindsey about any other issue before her termination on August 23. Barr Decl. ¶¶ 2–3.
- Tucker had known since April 2022 that Lindsey took a picture of a classroom poster, yet took no action—and didn't even mention it to Lindsey. Doc. 17-1 ¶ 2(b).
- Before Tucker terminated Lindsey, Tucker never informed Lindsey that other teachers did not want her to substitute; nor did she give Lindsey the

opportunity to meet with those teachers to resolve any differences they allegedly had. *See* Barr Decl. ¶ 6. And Lindsey had numerous substitute opportunities available to her through the BCS platform. *Id.*

- Lindsey is eminently qualified to substitute. She taught full-time for a decade in Bryan County Schools. Verified Compl. ¶ 19. Defendants do not contest that she received excellent reviews and never received discipline or complaints for the quality of her teaching or her treatment of children. *Id.* ¶¶ 20, 31. In fact, on a number of occasions, Defendant Tucker praised Lindsey for her teaching abilities and the relationships she had with her students and their parents. *Id.* ¶ 21. Nor do Defendants dispute that Lindsey had the respect of her colleagues and students' parents. *Id.* ¶¶ 32–33.

- Defendants undisputedly do not have enough qualified substitute teachers to meet their needs and have been unable to find substitute teachers when needed. Verified Compl. ¶¶ 68–69.

The evidence also overwhelmingly shows that Defendants had the "unconstitutional desire" to retaliate against Lindsey because of what she said. *Holly,* 755 F.2d at 1502. Defendants do not dispute that Lindsey respects all children regardless of their skin color, ethnicity, religion, and/or family background, including children whose parents identify as gay. Verified Compl. ¶ 28. And they rightly do not claim that Lindsey ever treated a child differently because of her race or familial background. Indeed, Lindsey treats *all* children equally. Barr. Decl. ¶ 7. Instead, they suggest Tucker had a sufficient basis to terminate Lindsey even though she erroneously ascribed purported "biases" to Lindsey. Opp. 9. Thus, according to Defendants, Defendant Tucker terminated Lindsey for her "biases." *Id.* But given the undisputed evidence showing that Lindsey never treated any child unequally, Defendant Tucker's belief in alleged "biases" is based solely on Lindsey's religious

13

speech. By terminating Lindsey for purported "biases," Defendant Tucker terminated her for what she said.

## II. Lindsey will likely succeed on her free exercise claim.

Defendants argue that—despite not bringing a Title VII claim—Lindsey must show she is likely to succeed on such a claim. Opp. 10. In Defendants' estimation, Lindsey cannot because there is no temporal proximity between Defendants learning of Lindsey's religious beliefs and terminating her, there is no direct evidence of religious discrimination, and—contradictorily—Lindsey cannot show she has a bona fide religious belief that conflicts with an employment requirement. Opp. 10–12. None of Defendants' arguments are availing.

Lindsey does not have to meet the Title VII standard. That analysis may apply when "a plaintiff attempts to use Title VII and 42 U.S.C. § 1983 as parallel remedies for the same allegedly unlawful employment discrimination." *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020). But Lindsey does not bring any Title VII claim here, so Title VII does not apply. *See Kennedy*, 142 S. Ct. at 2419 (not applying Title VII to public employee free exercise claim when the plaintiff did not raise a Title VII claim); *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1285–91 (11th Cir. 2012) (same). Defendants make no effort to counter Lindsey's arguments under the Free Exercise Clause, so this Court should grant the preliminary injunction on that basis alone.

Even so, Lindsey has shown all the necessary elements of a Title VII religious discrimination claim. Defendants terminated her because of her religious speech. *Contra* Opp. 10–11. Causation evidence can be either direct or circumstantial, such as by showing a close temporal proximity between the protected conduct and the adverse action. *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1351–52 (11th Cir. 2022). Lindsey has shown direct evidence of retaliation and religious discrimination: Defendant Tucker told her that she had "biases" based on her religious beliefs and

14

that Defendant Tucker fired her for that reason. Verified Compl. ¶ 51. That same evidence establishes discriminatory intent. *See Dixon v. The Hallmark Cos.*, 627 F.3d 849, 854–55 (11th Cir. 2010) (direct evidence of discrimination when employer said "You're fired, too. You're too religious."). As for temporal proximity, Defendants locked Lindsey out of the substitute teaching portal just one day after Lindsey expressed that "All Are Welcome" conflicted with her religious beliefs. Verified Compl. ¶¶ 41, 47.

Because Lindsey presented direct evidence of religious discrimination, she need not satisfy the *McDonnell Douglas* framework, but she does anyway. Defendants only contest that Lindsey did not identify a bona fide religious belief conflicting with an employment requirement. Opp. 12. But Defendants concede that Defendant Tucker knew since at least April 2022 that Lindsey had a religious objection to same-sex marriage. *Id.* at 10. And—according to Defendants—Lindsey's religious beliefs conflict with the employment requirement to "support" all students. Doc. 8-2 at 4:21. Defendants terminated her because of those religious beliefs, yet they make no argument to meet their burden that they could not accommodate Lindsey's religious belief without undue hardship. *See* Opp. 12. No such hardship exists. Lindsey undisputedly and successfully served for years as a fulltime teacher, earning praise from Defendant Tucker. Verified Compl. ¶¶ 68–69. She has no biases against students, and she treats all students equally. Barr Decl. ¶ 7. And she was serving as a substitute when the undisputed evidence shows Defendants needed substitute teachers. Verified Compl. ¶¶ 68–69. Defendants' shadowboxing against Title VII is for naught. Lindsey need not satisfy its standard, but she does.

### III. Defendants irreparably injured Lindsey by terminating her for her religious speech.

This Court, the Eleventh Circuit, and the Supreme Court have all already rejected Defendants' argument that "back pay and reinstatement or front pay" will remedy

15

their retaliation for protected speech. *See* Opp. 4. Cases, like the ones Defendants cite, "with injuries typically resulting from the loss of employment such as the loss of reputation, loss of income, and difficulty in finding other employment . . . shed[ ] little light on the case at hand where Plaintiff alleges retaliation and resulting injuries to h[er] right to free speech." *Kadalie v. Bd. of Regents of Univ. Sys. of Ga.*, 2005 WL 8156251, at *2 (S.D. Ga. July 18, 2005). In free speech cases like this one—"to provide the jealous protection that the First Amendment clearly deserves"—"courts must be able to enjoin activity that seeks to penalize past speech or deter future speech." *Id.* at *3 (citing *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983)). So, "[i]n a case involving the threatened termination of a public employee for exercising First Amendment rights, the Supreme Court stated, 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' " *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

In an attempt to escape *Cate*, Defendants offer a distinction without a difference—that *Cate* involved a malicious prosecution claim. Opp. 4–5. But *Cate* is unequivocal: "direct retaliation by the state for having exercised First Amendment freedoms *in the past* is particularly proscribed by the First Amendment" and is "irreparable injury." 707 F.2d at 1189 (emphasis added). In support of that conclusion, the Eleventh Circuit cited two Supreme Court public employee First Amendment retaliation cases. *Id.* (citing *Elrod*, 427 U.S. 347 and *Mt. Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 283–87 (1977)). And it also cited a Fourth Circuit case involving the "transfer of employee allegedly for exercise of First Amendment rights" that held that "[v]iolations of first amendment rights constitute per se irreparable injury." *Id.* at 1188 (quoting *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. 1978)). By terminating Lindsey for what she said, Defendants inflicted and are inflicting irreparable injury. Without a preliminary injunction, Lindsey continues to "suffer the irreparable injuries of punishment for exercising [her First Amendment] rights in the past and deterrence from doing so in

16

the future." *Kadalie*, 2005 WL 8156251, at *3. And Defendants do not dispute that they have in fact chilled Lindsey's speech. Verified Compl. ¶ 66. Defendant Tucker warned Lindsey that further expressing her religious beliefs could jeopardize her ability to volunteer at her children's school. Doc. 8-2 at 9:15–17. Lindsey needs preliminary relief to redress these ongoing irreparable injuries.

## IV. Reinstating Lindsey will restore the status quo.

Defendants misunderstand the preliminary injunction status quo. Defendants argue that because they terminated Lindsey before she could file this action, they have deprived this Court of the ability to right their wrong. Opp. 5. That's wrong. " 'Status quo' does not mean the situation existing at the moment the law suit is filed, but the last peaceable uncontested status existing between the parties before the dispute developed. Thus, courts of equity have long issued preliminary injunctions requiring parties to restore the status quo ante." *Nutra Health, Inc. v. HD Holdings Atlanta, Inc.*, 2021 WL 5029427, at *2 (N.D. Ga. June 29, 2021); *accord Yeargin Const. Co. v. Parsons & Whittemore Ala. Machinery & Srvs. Corp.*, 609 F.2d 829, 831 (5th Cir. 1980) ("status quo is last uncontested status of parties"). So reinstating Lindsey will return the parties to the proper status quo—that preceding Defendants' unlawful termination.

CONCLUSION

This Court should grant Plaintiff's motion for preliminary injunction.

Respectfully submitted,

*/s/ Mathew W. Hoffmann*

| | |
|---|---|
| Keri M. Martin<br>GA Bar No. 679803<br>Hall, Gilligan, Roberts<br>& Shanlever, LLP<br>7402 Hodgson Memorial Drive,<br>Suite 110<br>Savannah, GA 31406<br>Telephone: (912) 777-6636<br>kmartin@hgrslaw.com | Philip A. Sechler*<br>DC Bar No. 426358<br>Tyson C. Langhofer*<br>VA Bar No. 95204<br>Mathew W. Hoffmann*<br>DC Bar No. 1617417<br>ALLIANCE DEFENDING FREEDOM<br>44180 Riverside Pkwy<br>Lansdowne, VA 20176<br>Telephone: (571) 707-4655<br>Facsimile: (571) 707-4790<br>psechler@ADFlegal.org<br>tlanghofer@ADFlegal.org<br>mhoffmann@ADFlegal.org<br><br>*Counsel for Plaintiff*<br><br>**Admitted pro hac vice* |

CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2022, I filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to the following attorneys of record:

Hieu M. Nguyen
Aparesh Paul
Harben, Hartley & Hawkins, LLP
340 Jesse Jewell Parkway Ste. 750
Gainesville, Georgia 30501
hnguyen@hhhlawyers.com
apaul@hhhlawyers.com
Telephone: (770) 534-7341

*Counsel for Defendants*

Dated: October 27, 2022                */s/  Mathew W. Hoffmann*
                                       Counsel for Plaintiff